W. A. BROOKSHIRE, Appellant,

v.

Glenn POWELL, Ralph L. Alexander and Don C. Carter, Respondents.

No. 47337.

Supreme Court of Missouri,

Division No. 2.

April 11, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied May 9, 1960.

W. A. Brookshire, Columbia, for appellant.

Warren Welliver, Columbia, for respondents, Ralph L. Alexander, Columbia, and Don C. Carter, Sturgeon, of counsel.

LEEDY, Presiding Judge.

Action to set aside a sheriff's sale of plaintiff's farm under execution and also the deed made by that officer conveying the premises to the purchasers pursuant to the sale. The defendants are the sheriff, Powell, and the purchasers, Alexander and Carter. The court first entered an interlocutory decree granting, conditionally, the relief sought; but plaintiff declined to comply with the conditions thus imposed, and, in this contingency, as the alternative provided by such interlocutory decree, a final decree was entered which found the issues in favor of defendants, and dismissed plaintiff's petition. From this final decree the latter appeals. We will continue to refer to the parties as styled in the trial court, or, in some instances, by name.

The transcript execution under the authority of which the sale in question purports to have been held was issued out of the office of the Circuit Clerk of Laclede County on March 23, 1957. It was based on a judgment of the magistrate court of that county, rendered June 28, 1956, in favor of Raymond York and against Brookshire in the sum of $611.85 and costs. York's action was one to establish and enforce an agistor's lien upon 24 head of Hereford bulls belonging to Brookshire. It was filed in the Magistrate Court of Pulaski County and went on change of venue to Laclede County, where, upon a trial before the magistrtae of the latter county, that official, sitting as a jury, rendered judgment against Brookshire for the amount just mentioned, but further found that York had not established his right to the lien prayed for. On the same day, Brookshire filed both a "notice of," and an "application for" an appeal to the circuit court. The magistrate ordered that the

application be sustained, and granted an appeal, ordering the cause transferred. On July 10, defendant filed his appeal bond in the sum of $700, which was approved by the magistrate on that date.

The transcript of the proceedings before the magistrate were transmitted to, and lodged with the Circuit Court of Laclede County on July 9, 1956, and on July 14 a "Supersedeas Bond on Appeal from Magistrate Court" was filed in said cause in the circuit court. On November 20, York filed a motion in the latter court to set aside the magistrate's approval of the appeal bond on the grounds that it had not been timely filed, and that in violation of a certain stipulation filed in said cause, such bond was signed by only one surety (whose solvency had not been established), whereas the stipulation specifically provided that certain named persons were to become sureties thereon. On February 4, 1957, the circuit court sustained York's motion, and set aside the magistrate's order approving the appeal bond. Thereafter, on March 23, 1957, the transcript execution was issued, and in due time was received by the defendant sheriff, who levied upon plaintiff's 322-acre Boone County farm, filed the required notice thereof, and gave the prescribed notice by advertisement for the public sale at auction of such real estate to be held May 6, 1957.

At the appointed time the sheriff proceeded to conduct the sale but over Brookshire's protest which he read aloud to the sheriff and other persons assembled for the sale. The grounds of such protest were, in substance and effect: That the underlying judgment was not final because appealed from and a supersedeas given; the disparity between the value of the property to be offered for sale (allegedly in excess of $50,000) and the amount of the judgment ($611.85); the fact that he, Brookshire, had personal property consisting of livestock, machinery, library, furniture, and corporate stock of a value in excess of $50,000, which fact was allegedly known to the sheriff and York, and "that a levy upon

less than One Thousand Dollars ($1,000) of this personal property would be amply sufficient to satisfy the judgment and all costs." After several bids had been made (amounts undisclosed), Brookshire bid the sum of $10,000, and no further bids having been made, the property was knocked off and sold to him at that price and sum. At the time of the sale the sheriff had in his hands three other transcript executions against Brookshire (together with a distress warrant for Federal taxes, $3,516.46). All of the executions, including that in the York case, aggregated approximately $2,300. Under such executions he had previously levied upon the same lands as those now in question.

Immediately after the sale, plaintiff and defendants herein retired to the sheriff's office, where, according to the plaintiff, he stated that the only amount he would be required to pay was the judgment, together with interest and costs, and that it was there agreed "that that was the amount;" that the sheriff figured up the entire amount of the costs and gave the figure (something over $700) to the plaintiff, who asked that the sheriff meet him at the Boone County National Bank, where he would give him a draft; that plaintiff went to the bank and shortly after he arrived the sheriff came, but the sheriff declined to accept the amount of the judgment together with interest and all costs. On the other hand, the sheriff testified that the first he heard anything said by Brookshire that he wanted to pay only the York judgment and costs was at the bank; that the witness informed Brookshire at that time that he would be required to pay the amount of his bid, $10,000; that he further advised plaintiff of the other executions which he held against him, and the distress warrant for Federal taxes. Brookshire then told the witness that he was not going to pay the $10,000, but did offer to pay the amount of the York judgment together with interest and costs. The sheriff then advised him that "I was going to come back up here and sell it over." The witness then returned to the court

house immediately and again sold the farm, and at such sale the respondents were the purchasers for $2,300. It is inferable from plaintiff's testimony that the second sale was held while he was communicating by telephone with a lawyer in St. Louis, and that he did not know until May 8 that the second sale had been held. The proceeds arising from the second sale were applied by the sheriff to the payment of the York and other executions then in his hands (but not the distress warrant for Federal taxes), leaving a surplus of $72, which sum Brookshire refused to accept when tendered by the sheriff. Other facts, if pertinent, will be stated in connection with the points to which they relate.

■ The first point urged against the validity of the second sale and the deed to defendants is that the York judgment (to satisfy which the farm was sold) is void on its face because rendered in an amount in excess of the monetary jurisdiction of the magistrate court as fixed by § 482.090(2), RSMo 1949 and V.A.M.S. (All statutory references are to these sources, unless otherwise expressly noted.)

It is true that in the ordinary action that section does limit the monetary jurisdiction of magistrate courts in counties having a population such as that of Laclede County to the sum of $500, and the York judgment was in excess of that sum. But, as previously pointed out, York's action was one to establish and enforce an agistor's lien. Such lien is created by § 430.150, and the method of enforcing it is prescribed by § 430.160 (insofar as here pertinent), as follows: "The lien provided for in section 430.150 shall be enforced as follows: The person claiming the lien shall file with a magistrate of the county in which he resides, a statement duly verified * * * setting forth his account and a description of the property on which the lien is claimed, and thereupon the magistrate shall issue a summons, as in ordinary civil actions, returnable forthwith; * * *. When the defendant shall have been summoned or

notified as aforesaid, the cause shall, on the day fixed for trial, be tried as any ordinary case in a magistrate's court. If the judgment be for the plaintiff, the magistrate shall order the property upon which the lien shall have been found to exist to be sold to satisfy the same. * * * If the defendant shall have been summoned, or shall have appeared to the action, and the plaintiff shall have established an indebtedness on the account sued on, but shall have failed to establish the lien claimed, the judgment shall be for the plaintiff for such indebtedness, but the cost of suit, or any part thereof, may be taxed against him."

This section was construed in Coates v. Acheson, 23 Mo.App. 255, a case involving a hotel and boarding house keeper's lien upon baggage. It was there held that the lien claimed was purely the creature of the statute; that a complete and adequate remedy for its enforcement was provided by this very section (then known as § 3197, R.S.Mo. 1879, which has since been amended in certain respects not here pertinent), and that such remedy was exclusive, and consequently the circuit court which had established the lien and ordered enforcement against the property had no jurisdiction of the case as a court of equity or otherwise. Insofar as we are able to discover, the rule thus announced has remained unchallenged nearly 75 years; nor is it here directly challenged. Although defendants cite and rely upon it, curiously, plaintiff does not mention or discuss it.

Institution of the action in the magistrate court, and the proceedings therein taken were in conformity with the requirements of § 430.160, including the provision that if defendant "shall have appeared to the action, and the plaintiff shall have established an indebtedness on the account sued on, but shall have failed to establish the lien claimed, the judgment shall be for the plaintiff for such indebtedness, * * *." As both forum and procedure were authorized and directed by the express terms of the statute, it follows that the judgment of

the magistrate in the York case is impervious to the attack that it is void on its face.

Plaintiff urges that York was estopped from suing out the transcript execution because a stipulation of the parties had been filed in his case in the circuit court reciting the fact that an appeal bond had been given in such case, by the terms of which still another case against Brookshire was to be held in abeyance pending the disposition of the York case. The court out of which the execution issued was the proper forum in which to have had determined the question thus raised, either by motion to quash the execution or to recall the same. We do not mean to imply that the Boone Circuit Court could not in any event give relief on this ground, but we take the obvious view that primarily the Laclede Circuit Court was the forum to which resort should have been made for relief on this ground, and this was not done. The contention thus made is not entitled to consideration here because it overlooks the subsequent action of the circuit court in setting aside the magistrate's approval of the appeal bond, thus rendering the bond nugatory as a supersedeas, and subjecting the judgment to compulsory payment by means of the writ of execution.

Plaintiff next contends that his tender was sufficient, and that it extinguished the lien of the execution so that there was nothing upon which the validity of the second sale could be based, and it was therefore void. Blalock v. Wells, 141 Ga. 623, 81 S.E. 853; Tiffany v. St. John, 65 N.Y. 314; Reed v. Shepperd, 38 Mo. 463; Freeman on Judgments, 5th Ed., 2086, § 998; Haile v. Smith, 113 Cal. 656, 45 P. 872; 21 Am.Jur., Executions, § 504, § 507; 33 C.J.S. Executions, § 331. Defendants counter with the proposition that the tender was insufficient in amount and the sheriff was not authorized to accept it because it was his duty to apply the surplus arising from the (first) sale to the payment and satisfaction of the other executions against Brookshire which the sheriff then had in his hands. Dierks & Sons Lumber Co. v. Taylor, 226 Mo.App. 746, 46 S.W.2d 244; Hall v. Giesing, 178 Mo.App. 233, 165 S.W. 1181; Strawbridge v. Clark, 52 Mo. 21. We find none of the authorities cited to be precisely in point on these particular questions. Without lengthening this opinion by attempting to demonstrate the correctness of this statement by an analysis of each case, it may be said that they either do not make the rulings attributed to them, or else the facts are so different as to render them not even persuasive.

We have no doubt that it is a sheriff's duty to accept tender by the debtor of the amount due under an execution, if seasonably made, i. e., prior to the sale, and his refusal so to do would entitle the debtor to relief from the consequences of any subsequent sale of his property. But no one would contend for the application of this principle if the tender be not made until *after* a sale at which a stranger (instead of the execution debtor) had become the purchaser. Of course, neither of these hypotheses fit our facts, for here the tender was made after the sale, but the debtor had himself become the purchaser of the property. Ordinarily, when a bidder refuses to pay the amount of his bid, it is the duty of the sheriff to resell the property, and this may be done "at the same term, or he may resell it on a subsequent day, as though no previous sale had been made" (§ 513.240). Here we are dealing with an obviously good faith attempt on the part of the sheriff to subject, legitimately, the surplus arising from the sale to the payment of the other executions. The officer's reception of a second writ of execution while the first is in his hands operates as a constructive levy on all property in his possession by virtue of the first writ. State, to Use of McMurray v. Doan, 39 Mo. 44. Brookshire knew of the existence of the other liens when he made his bid (and, as a lawyer, he knew of the rule of law just mentioned), so that his refusal to pay or tender an amount sufficient to satisfy them, in addition to the York judgment and costs,

was at least provocative and, in effect, an invitation to the sheriff to proceed under the statute and resell. We hold his belated and untimely offer did not terminate the *power* of the sheriff so to proceed, but the question of whether it should have been exercised under the existing circumstances is another matter. The view we take of another feature of the case makes it unnecessary to inquire into and pass upon the latter question.

For our purposes, it will be assumed that the sheriff had the authority to resell at the time and place the second sale was conducted. Looking further into the facts surrounding such second sale, we find the purchasers were the attorneys for the sheriff. They were present, and advising him as such. As indicated, Brookshire, too, is a licensed attorney. There was but a single bid made at the second sale, to-wit, $2,300, at which sum the land was struck off and sold. There were liens of record against the land aggregating approximately $40,000. However, it is not seriously disputed that all of the indebtedness whereon those liens were based (except a balance of Five or Six Thousand Dollars on a deed of trust, the three other executions here involved, and certain ad valorem taxes) had been adjusted or discharged, but not released of record. These facts were known, substantially, to the purchasers in formulating their bid. They admit the reasonable market value of the farm was from Forty to Forty-five Thousand Dollars. Plaintiff's evidence puts that figure at Seventy Thousand Dollars. The trial court was of the opinion, and correctly so, that this great disparity between the market value and the $2,300 bid at which the property sold rendered the consideration so inadequate as to shock the conscience of the court, and thus constitute a constructive fraud. Such is the tenor of the later cases. Wieser v. Linhardt, Mo., 257 S.W.2d 689, and cases therein cited. However, the proceeds of defendants' bid having gone to satisfy the other execution liens on plaintiff's lands, the court required him (as the condition upon which the sale and deed would be set aside) to do equity by reimbursing the purchasers for their outlay (with interest) of $2,300, and that if the money remaining in the sheriff's hands be insufficient to pay all costs of the first sale, including statutory sheriff's commissions on the sale price of $10,000, that plaintiff pay such deficiency.

As stated, plaintiff, declined to comply with the conditions just mentioned, and, in consequence of such default, suffered final judgment to be rendered against him. Then, long out of time, he came into court and made tender of the amount thus required for the benefit of the purchasers, but appended the condition that it "shall remain in the registry of this court subject to a final judgment of this court as directed by an appellate court." While the "tail" affixed to his tender was wholly unauthorized, and at variance with the conditions on which the court had offered relief, this second of his belated and untimely tenders (for making which plaintiff seems to have developed a penchant) does seem to evince a delayed willingness on his part to do equity. He would not be entitled as a matter of right to consideration in this court of this last so-called tender, but we have nevertheless concluded that his rebelliousness and obstinacy in persistently spurning the trial court's offer of relief should not, under the circumstances disclosed by the whole record, be a perpetual bar to the restoration of his property which we find was sacrificed. In this situation, and because none of the other grounds urged by plaintiff, even if found in his favor, would in equity entitle him to relief on more favorable terms than those imposed by the interlocutory decree, there is no necessity for examining into plaintiff's other attacks upon the validity of the sale and deed. Accordingly, if plaintiff will, within 15 days, deposit in this court, for the use and benefit of those entitled thereto, the sums specified in the interlocutory decree, the decree appealed from will be reversed and the cause remanded with directions to cancel the sheriff's sale and the

sheriff's deed to defendants made pursuant thereto; otherwise, the decree will stand affirmed. In either event, costs are to be borne by plaintiff.

All concur.