Earl C. KOESTER, II, et al., Plaintiffs,

v.

Roscoe KOESTER and Eula G. Koester, his wife, Defendants-Appellants,

v.

LUCAS AUTO SALES, INC., Intervenor-Respondent.

No. 37112.

Missouri Court of Appeals, St. Louis District, Division Two.

Oct. 26, 1976.

Jeremiah Nixon, Dana A. Hockensmith, Thurman, Nixon, Smith, Howald, Weber & Bowles, Hillsboro, for defendants-appellants.

Nicholas G. Gasaway, Hillsboro, for plaintiffs.

Robert C. Dodson, Festus, for intervenor-respondent.

STEWART, Judge.

This appeal arises out of a judicial sale of real property located in Jefferson County under an interlocutory judgment of partition by the Circuit Court of Jefferson County. Defendant appeals from the final judgment approving the sale to intervenor, Lucas Auto Sales, Inc. We affirm.

Plaintiffs filed this action in partition with respect to certain real estate known as the "Mill Lot" in Festus, Missouri, in which the parties held undivided interests as tenants in common.

The notice of sale was prepared by plaintiffs' attorney and was properly advertised by the sheriff. The notice of sale provided that the sale would "commence promptly at 10:00 a. m." on February 26, 1975. It also provided:

> "Terms of said sale are such that the purchaser may pay ten percent (10%) of the amount of his bid at the time of the sale with the remainder to be paid in cash within thirty (30) days after the date of the sale with interest at eight per cent (8%)."

On February 26, 1975, the sheriff announced the sale in open court and promptly at 10 a. m. opened the bidding at the appointed place. There were approximately nine persons present in addition to the sheriff. The property was "knocked down" at $9,000.00 to a Mr. Havin who was bidding on behalf of Intervenor, Lucas Auto Sales, Inc. There were 16 bids made by 5 persons during the auction. Nicholas Gasaway, attorney for plaintiffs, made three bids on behalf of plaintiff, Earl Koester. His final bid was $4,500.00. Defendant, Roscoe Koester made one bid of $7,500.00.

Immediately after the sale Mr. Lucas made a payment of $1,500.00, on behalf of Lucas Auto Sales, Inc. The balance of the sale price was paid on March 3, 1975.

On March 4, 1975, defendants filed a motion to set aside the sale and to order a new sale stating that defendants would make a first bid of $22,000.00. On March 11, Lucas Auto Sales, Inc., filed a motion to intervene and a motion to confirm the sale.

On March 18, plaintiffs filed a motion consenting to the setting aside of the sale upon payment by defendants of $22,000.00 into the court as a first bid at a new partition sale. Defendants thereafter deposited the equivalent of $22,000.00 as a tendered first bid. On the same date defendants filed a motion to deny intervention and to strike intervenor's motion to confirm. The motion to intervene was sustained on March 31, 1975. The court upon hearing confirmed the sale to Lucas Auto Sales, Inc., and entered final judgment in this cause. Other facts pertinent to the issues raised will be set out hereafter.

The defendants' purpose in this appeal is to have the confirmation of the sale set aside and to have the cause remanded for another judicial sale. Our consideration of defendants' contentions on this appeal must be guided by the general principle that approval of judicial sales rests largely in the discretion of the trial court and its action in confirming or in setting aside a sale will not be interfered with unless there is a manifest abuse of discretion. *DiLeo v. Hunter*, 505 S.W.2d 112 (Mo.App.1974).

Defendants first contend that the court erred in confirming the sale because the terms of sale varied from the order of sale. They argue that the sale was chilled because contrary to the order the notice provided for 8% interest to be paid on the unpaid balance of the sale price until fully paid within the 30 day period provided for payment in full.

■ The general rule would seem to be that a notice and sale must comply with the provisions of the decree. However, to render a sale void or voidable the irregularity must be such as to affect the sale to the prejudice of the parties. 50 C.J.S. Judicial Sales § 10e, p. 591, 50 C.J.S. Judicial Sales § 54b, p. 674.

■ In support of this contention defendants cite us to *Boxwell v. Boxwell*, 444 S.W.2d 510 (Mo.App.1969). This case stands for the general proposition that, any action on the part of any persons which prevents a free, fair and open sale or chills the sale is contrary to public policy and should be set aside.

In *Boxwell*, the plaintiff, as the only participant, bid on the property for $5,000.00. Prior to the sale a witness was advised by plaintiff that he was prepared to bid up to at least $12,500.00 for the property which the witness felt to be worth ten, eleven or twelve thousand dollars. As a result the witness did not attend the sale. It is apparent that the actions of the plaintiff in that case chilled the sale permitting him to purchase it at a lower price to the prejudice of the defendant.

■ It is generally stated that a purchaser at a judicial sale is liable for the payment of interest on the balance of the purchase price from the date of sale until paid. 50 C.J.S. Judicial Sales § 30e, p. 626, 47 Am.Jur.2d Judicial Sales § 311 p. 544. A potential bidder could contemplate the payment of some interest from the date of sale until the price is fully paid in accordance with the terms of sale. 8% for a maximum period of 30 days is minimal. There is no evidence in this case from which it can be said that potential bidders refrained from attending the sale and bidding because the notice provided for interest of 8% on the unpaid balance. There is no indication from those bidding that they dropped out of the bidding because of the nominal amount of interest provided in the notice. At least nine persons attended the sale. Five persons, including the defendants and one of the plaintiffs, actively participated in the bidding. Sixteen bids were made before

the property was "knocked down" to intervenor. The trial court did not abuse its discretion when it necessarily concluded that the insubstantial variance in the notice of sale did not chill the sale.

■■ Defendants also contend that the sale was chilled because intervenor and Mr. Havin were bidding for the same party. A person may bid by agent. In this case there is no evidence that any persons were deterred from bidding by reason of the fact that Mr. Lucas and Mr. Havin were bidding for Lucas Auto Sales. The cases cited by defendants are not applicable to the facts of this case.

Defendants further contend that the court erred in confirming the sale because defendants were unable to look after their interests because of (1) their ill health; (2) their daughter who was to assist defendant, Roscoe Koester at the sale arrived late because the measurement of time had changed from central standard to daylight savings time; and because her automobile malfunctioned, causing her to be late; and (3) because of the inadequacy of the sale price and the cumulation of circumstances surrounding the sale.

We review the facts pertinent to these considerations. Defendant Roscoe Koester at the time of sale was seventy years of age and in poor health. His wife is confined to the home. They manage to take care of their needs. Mr. Koester's illness is physical, not mental. Mrs. Virginia Gilliam, defendants' daughter, testified that she discussed the sale with her father some time before the date upon which the property was sold and it was agreed that she would bid on behalf of her father and that they would go as high as $22,000.00. On the day of the sale, Wednesday, February 26, 1975, she arrived at the scene of the sale approximately five minutes after the sale had closed. The sheriff had left before she arrived. She demanded of the sheriff's deputy-clerk that the property be re-sold. This was refused.

Mrs. Gilliam explained that she was late because on the Sunday before the sale,

which was on Wednesday, daylight savings time had gone into effect and she had not changed her clocks. She also testified that her car had malfunctioned as she was driving to the sale.

At the hearing a witness on behalf of defendants testified that the market value of the property was $30,000.00. Mrs. Gilliam placed the value at $50,000.00. A witness on behalf of intervenor testified that the market value of the property at the time of sale was $15,000.00.

Mr. Koester was ill at the time the motions with respect to confirmation of the sale were heard and he did not appear.

In urging us to overturn the judgment of the trial court in confirming the sale defendants direct us to the broad general language found in *Patton v. Hanna*, 46 Mo. 314, at page 315 (1870):

"In these proceedings the utmost fairness and good faith should be observed, and if, from accident, mistake, or any cause, the parties interested have been prevented from looking after their interest, and the property has been sacrificed, a sound exercise of judicial discretion would demand that the sale be set aside."

In the case now under consideration the court was not requested to and did not make formal findings of fact. It did, however, state of record that it "did not find that the consideration paid was inadequate under the law" and denied the motion to set aside the sale.

■ It was the order of the court that ". . . the premises be sold to the highest bidder." The sale in this case was a forced sale. Market value may be considered in determining the adequacy of the sale price but it is not the measure of adequacy. The test of adequacy in a judicial sale is the price received in comparison with what the property would bring in a fair sheriff's sale. *City of St. Louis v. Peck*, 319 S.W.2d 678, 684 (Mo.App.1959).

■ The parties plaintiff were present at the sale through Earl C. Koester II and their attorney. Defendants were represented by Roscoe Koester. Roscoe Koester had a history of physical illness but he appeared normal and alert on the day of the sale. The parties were not only present to protect their interest but actively participated in the bidding. The sale was held at the time provided in the notice of sale. The trial court was warranted in finding that the sale was open, fair and public; that neither the sheriff nor the purchaser did anything to prevent the property from selling at a higher price and that the property had not "been sacrificed." We cannot say that the finding of the court that the sale price was adequate was a manifest abuse of discretion.

The facts in this case are materially different from those in *Patton v. Hanna, supra*, which is relied on by defendants. In reversing confirmation of a sale in *Patton*, the court noted that it was "doubtful [that the notice] was published according to law" and it was "clearly shown that none of the parties except the purchaser knew of the sale." The purchaser was the only bidder.

■ If the sale cannot be said to be a "sacrifice" but adequate as found by the trial court the other factors such as the delay occasioned in Mrs. Gilliam's arrival at the sale will not be considered nor does the fact that a higher offer is made after the sale prove that the price was inadequate. *Borchers v. Borchers*, 352 Mo. 601, 179 S.W.2d 8 (1944). As was said in *DiLeo v. Hunter*, 505 S.W.2d 112 (Mo.App.1974), "a sale at some point must be final."

Defendants contend that the court should have set aside the sale and ordered a new judicial sale because all plaintiffs and all defendants joined in defendants' motion to set aside the sale.

Defendants rely primarily upon *Hiatt v. Hiatt*, 188 S.W.2d 863 (Mo.App.1945) and *Ivory v. Delore*, 26 Mo. 505 (1858). Neither case is authority for defendants' contention. The cases stand only for the proposition that a partition action may be dismissed by plaintiff or at the request of plaintiff and defendant after the court has entered its interlocutory decree in partition. There had been no sale in either case.

 The primary purpose of our courts in the field of civil law is the determination of disputes which the parties have been unable to resolve among themselves. The courts are ready to stand aside and permit the parties to resolve those issues at any time during the pendency of the litigation so long as they are not under disability and are suing or defending for themselves alone. *Hiatt v. Hiatt, supra.* They may not by agreement among themselves affect the rights of other persons.

 In an action for partition the purchaser at the sale incurs obligations which subject them to the jurisdiction of the court he also acquires correlative rights. See 59 Am.Jur.2d Partition § 125, p. 870. The purchaser is obligated to pay the purchase price, and it has been held that the original parties to the partition action do not have the right to have proceedings that have been brought against the purchaser for that purpose dismissed. *McNamee v. Cole,* 134 Mo.App. 266, 114 S.W. 46 (1908). The purchaser is entitled to the rents and profits of the land from the date of sale. *Winfrey v. Work,* 75 Mo. 55 (1881). It follows that he has such an interest in the property as to be heard on a motion to set aside or a motion to confirm the sheriff's sale. *Wauchope v. McCormick,* 158 Mo. 660, 59 S.W. 970 (1900),[1] *Thomas v. Elliott,* 215 Mo. 598, 114 S.W. 987 (1908).

 In this case the purchaser sought and was granted the right to intervene under Rule 52.12(a)(2). Having intervened he became as much a party to the action as the original parties. 59 Am.Jur.2d Parties § 177 p. 615. See concurring opinion of Hyde, P. J., in *Leggett v. General Indemnity Exchange,* 363 Mo. 273, 250 S.W.2d 710, 718 (1952). Defendants with whom plaintiffs joined, sought to set aside the sale. They did not seek to dismiss the action. As noted above when the sheriff "knocked down" the property to intervenor, intervenor became obligated to pay the full purchase price, he also acquired an interest in

the property which he had a right to protect. The case is thus distinguishable from *Hiatt v. Hiatt, supra,* where the action was dismissed before the rights of the purchaser had intervened. The original parties to an action in partition may not by agreement among themselves defeat the rights of the purchaser at a judicial sale. To hold otherwise would have a chilling effect on all partition sales.

We conclude that the trial court did not abuse its discretion in confirming the sale in this case.

The judgment is affirmed.

CLEMENS, P. J., and DOWD, J., concur.

---

1. This case was overruled by *Thomas v. Elliott,* 215 Mo. 598, 114 S.W. 987 (1908), on another point.