**ELLEN C. HANSEN, Plaintiff**

**v.**

**ELISHA T. COMBS, JR., Defendant**

**v.**

**THE GOVERNMENT OF THE VIRGIN ISLANDS, Intervenor**

Civil No. 1976-524

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 7, 1977

MARIO E. BRYAN, ESQ., St. Thomas, V.I., *for plaintiff*

GUSTAV DANIELSON, ESQ., St. Thomas, V.I., *for defendant*

GWENELLEN P. JANOV, ESQ., Assistant Attorney General (Attorney General's Office), St. Thomas, V.I., *for intervenor*

PETERSEN, *Judge*

## MEMORANDUM OPINION

The plaintiff-creditor obtained a default judgment against the defendant-debtor in the amount of $8,624.50. A writ of execution was issued and a notice of the Marshal's sale was advertised in the Daily News on May 28, 1977. On June 11, 1977, the Acting Marshal of the Territorial Court held an auction at 11 Crystal Gade, offering for sale all of the defendant's personal belongings, excepting the "light fixtures, refrigerators, stove and some clothing." Nine prospective bidders appeared at the sale; thereupon the Marshal announced that the items would be sold in bulk to the highest bidder. He likewise announced that 10% of the bid price was to be paid by cash or certified check at the time of the sale and 10% within ten days of the sale. After inviting questions, he opened the auction.

Two bids were received. One bid was in the amount of $9,000.00 from the attorney[1] presently representing the

---

[1] At the hearing on the motion to vacate the sale, the attorney indicated he was not bidding on behalf of his client.

plaintiff-debtor herein, and the other bid was in the amount of $9,150.00 from the Government of the Virgin Islands, acting by and through the Director of Bureau of Library, Museum and Archives, Department of Conservation and Cultural Affairs. Accordingly, the property was sold to the Intervenor, Government of the Virgin Islands. Immediately after the sale, the successful bidder delivered to the Acting Marshal a signed Memorandum of Agreement by the Commissioner of Property and Procurement and the Commissioner of Conservation and Cultural Affairs in lieu of the required previously announced cash or certified check.

Two days later the defendant, who had neither been present nor represented in any phase of the action, filed a motion to vacate the sale. The Government of the Virgin Islands was permitted to intervene. The defendant has attacked the execution sale on the following grounds:

1. That the notice of sale was inadequate in describing the defendant's property.

2. That the sale was irregularly conducted in that the Marshal sold all of the defendant's property in bulk and not by parcel, and thereby significantly limited any competitive bidding at the sale;

3. That the sale price received for the defendant's property was grossly inadequate;

4. That the Government as purchaser did not comply with the terms of the sale since it failed to deliver to the Marshal at the time of the sale 10% of its bid price either in cash or by certified check; and

5. That the Government both conducted the sale and was the purchaser thereof.

As the first ground urged by the defendant-debtor to set aside the sale, this Court must be guided by the language of

section 484 of Title 5 which states in relevant parts as follows:

(a) Before the sale of property on execution, a written or printed notice of the time and place, particularly describing the property shall be . . . published in the judicial division in which the sale is to take place . . . .

The notice of sale appearing in the Daily News described the property for sale as follows:

Miscellaneous Household Furnishings, Antiques, Numerous Works of Art, Wall Paintings and several thousand books—

■ Obviously, where the description of the property is erroneous or insufficient the sale will be set aside—Lucerne Investment Co. v. Estate Belvedere, Inc., 7 V.I. 242 (1969), even if the actual purchaser knew what he was buying or the debtor knew what property was being sold. A sufficient description is necessary so that every person invited to attend the sale knows what is to be sold. Fox v. Curry, 29 P.2d 663 (1934).

■ Does the word, "antique", put a person on notice that the defendant's rare collection, including pre-columbian objects, rare books, paintings and maps would be sold? The word "antique" is defined in general as anything very old; a relic or object of ancient art, collectively the antique, the remains or style of ancient art, as busts, statues, paintings and vases; see 3A Words and Phrases, p.10.

It is my opinion that the use of the word "antique" followed by the words "works of art and wall paintings", would serve to indicate to any interested party that more than mere household furnishings would be offered for sale. Indeed, the bidders present who testified indicated that it was the advertisement that attracted them to the sale. Moreover, I find that the category of goods listed to be sold was described generically and were particularized sufficiently to attract interested persons.

■ The defendant has cited 5 V.I.C. 485 to support his proposition that the property should have been sold in smaller parcels rather than in bulk. However, the statute further refines that requirement with the added language "as are likely to bring the highest price." Yet there has been no competent evidence from which this Court could determine the maximum potential sale price of the parcels if sold individually with the sale price received when sold en masse. None of the witnesses testified to an appraised value. Accordingly, considering the allowable discretion to the Marshal to sell the property so as to realize the highest price, and that only so much should be sold as to satisfy the judgment, under the particular circumstances herein outlined, I cannot find that there was an abuse of discretion by the Marshal. Moreover, the Marshal testified that his seven years of experience in conducting sales has shown that the sale of numerous items in smaller parcels failed to produce sufficient to satisfy the judgment. Indeed, at no time prior to the sale was he ever advised as to the relative merits of selling the items contained therein in smaller parcels.

It is noteworthy that the defendant, the judgment debtor, or someone representing him, might have been present at the sale, and might have registered a firm protest to the manner in which the property should be sold. But he was not there, nor was he represented. One of the bidders, who is now the attorney for the defendant-debtor, specifically stated that he was not bidding on his client's behalf.

■ The Marshal, having only his limited training and not being an appraiser of the items to be sold nor the amount that may be realized from their alleged rare value or quality was forced to rely on his own judgment. If this Court were able to ascertain by competent proof that the Marshal made a "mistake" in that the price to be realized when sold in smaller parcels would have been as great as the price actually realized, I would have encountered no

difficulty in setting aside this sale.[2] Truly, the burden of proof rests on the party attacking the sale and not on the purchaser. 30 Am.Jur.2d § 312 (1967).

As there has been no competent evidence presented as to the appraised value of the items sold, I am unable to make a finding that this was a sacrifice sale of said items.

The Marshal is entrusted with broad discretion in conducting execution sales. Nevertheless, such discretion must be fairly and impartially exercised for the benefit of all concerned. It is his duty to act in such a manner as to protect the interests of both parties and to be sure that the property is not sacrificed.

Moreover, the Marshal's own testimony at the hearing indicated that he was of the opinion that his primary function was to protect the interests of the plaintiff and to try to get sufficient funds to cover the writ of execution and that he had no obligation to protect the defendant's interest. Although his statement is erroneous, I cannot find that his method of conducting this sale showed that he failed to exercise wise and sound discretion.

I am especially troubled, however, by the revelation that there are no specific guidelines nor established regulations to govern the manner in which the Marshal should conduct execution sales. The Marshal has indicated his lack of experience in appraising items to be sold by him as well as the lack of any guide to assist him in determining whether items should be sold in smaller or large parcels or under what circumstances en masse.

Moreover, from his testimony it appears he has never been made fully aware of his responsibility to all parties.

---

[2] The evidence presented, however, consisted primarily of 4 bidders who indicated an interest in bidding on specific items. One bidder indicated he was merely interested in maps and would have probably made a maximum bid of $1,000.00. Another indicated he was interested primarily in Caribbean works and would have spent up to $3,000.00; a third indicated his interest was limited to artifacts and may well have bid up to $1,500.00.

Faced with no established regulations to govern the manner in which the sale should be conducted, it was within his discretion to establish the procedure and may well modify them in a reasonable manner when in a given case it appeared to be warranted, as long as such modification is not prejudicial to the rights of any party. This case, however, strongly points up the need for clearly defined rules and regulations governing formalized procedures and methods for conducting execution sales as well as the obvious need for training of the Territorial Marshals in this particular phase of their duties.

▇ The defendant-debtor has likewise advanced the argument that the sale price received for the defendant's property was grossly inadequate. However, there has been no proof indicating the reasonable cash market value of the items shown. See, e.g. Tilles v. Sample, 500 S.W.2d (1973).

Aside from the testimony of the four bidders indicating the maximum amount for which they were willing to offer a bid on specific items, the only testimony relating to possible value of any of the items was that of Dr. Chang who indicated that purchase of books on the open market at this time may well amount to over $10.00 per book if new. No one present appeared to give any expert testimony as to the condition of the items, the amount, nor what they would possibly be worth on the open market. Indeed, inspection of said items by all interested parties was minimal.

Lacking competent evidence to substantiate the fair market value of the defendant's goods, I am unable to render a finding that the price for which the goods were sold was grossly inadequate.

▇ In execution and judicial sales, the test of adequacy is the price received in comparison with what the property would bring in a fair sale. See Koester v. Koester, 543

S.W.2d 51 (1976); City of St. Louis v. Pick, 319 S.W.2d 678 (1959).

■ Moreover, it is well established that the mere inadequacy of price, not tainted by circumstances of fraud, misconduct, accident, mistake or surprise tending to influence the result is not sufficient to invalidate a sale. Fox v. Curry, 29 P.2d 663 (1934). Ex Parte Spiller, 336 So.2d 1113 (1976).

In order to warrant setting this sale aside, I must be directed to an irregularity calculated to affect the sale price. Thus, I am confronted with the issue as to whether the Government's failure to tender cash or certified check at the time of the sale constituted such an irregularity as to render the sale invalid.

Naturally, an irregularity coupled with an inadequate price would warrant setting aside this execution sale. The Court in Prudential Corporation v. Bayman, 512 S.W.2d 85 (1974) clearly noted that "a plaintiff seeking to set aside an execution sale must show an irregularity calculated to effect the sale and an inadequate price . . . . This proof gives rise to an inference that the sale was fraudulent or that the irregularity contributed to the low price."

A thorough search of the Title 5 of the Virgin Islands Code failed to reveal any statutory requirement that payment must be by cash or certified check. See Perry v. West, 266 A.2d 849 (1970) (Municipal Ordinance).

■ When confronted by a purchaser whom the Marshal considered to be solvent and whom he knew was unable to conduct business by cash or certified check, the Marshal accepted a Memorandum of Agreement signed by two Commissioners. In light of his prior announcement which was modified however, it is my opinion that his acceptance of the Memorandum of Agreement was a variance of the terms of the sale and thus constituted an irregularity.

471

Obviously it was incumbent upon the Marshal to conduct the sale in a less casual manner to avoid the appearance of impropriety. However, I am unable to find that such irregularity had an influence upon the consideration for which the items were sold.

Moreover, two days after the sale a check in the amount of $910.00 was tendered by the Government and accepted by the Marshal. See General Electric Credit Corporation v. Taro, 304 So.2d 89. In the absence of fraud, collusion or undue influence, there appears to be no theory advanced wherein the Government should be precluded from participating in an execution sale.[3] Moreover, the hearing on the motion was devoid of evidence to substantiate a claim of fraud, conspiracy or collusion between the Government and the Marshal. While there were but two bidders who sought to purchase the defendant's goods, there were other parties present who witnessed the sale, were free to tender questions, and were likewise aware of the plaintiff-creditor's interest in said goods and could have likewise sought prior inspection. It is likewise noted that the Marshal's testimony indicating that he had absolutely no contact with the representatives of the Government was undisputed.

Accordingly, for the foregoing reasons, the Motion to Vacate the execution sale is hereby denied.

---

[3] 33 V.I.C. 2552 permits government to purchase property at public auction. There appears to be no valid reason to differentiate sale of personalty.