Jeff SISK, and Jeff T. Sisk, Limited Conservator for Jeff Sisk, a/k/a Jeff L. Sisk, Plaintiffs/Appellants,

v.

McILROY AND ASSOCIATES, and Ralph Hendrix, Sheriff of Barry County, Missouri, Defendants/Respondents,

and

Johnny BERRY and Martha Berry, and Troy and Mary Ann Berry, Defendants, Cross-Claimants and Third–Party Plaintiffs/Respondents,

v.

Lisa S. YOUNG, Kim S. Daniels, James W. Sisk, Jeff T. Sisk, and J.J.J. Ranch, Inc., Third–Party Defendants/Appellants.

No. 20657.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 7, 1996.

Randee S. Stemmons, Stemmons, Stemmons & Cowherd, P.C., Mt. Vernon, for Plaintiffs/Appellants.

John Sims, Sims, Johnson, Wood and Higdon, Neosho, for Defendants–Respondents.

GARRISON, Judge.

This appeal is from an adverse judgment entered on the petition of Jeff Sisk (Plaintiff) to set aside sheriff's deeds executed pursuant to an execution sale. We affirm.

Plaintiff was the owner of a 652–acre farm in Barry County. On April 4, 1994, McIlroy and Associates (McIlroy) obtained a judgment against Plaintiff in the Circuit Court of Barry County in the amount of $41,858. Pursuant to McIlroy's request, Ralph Hendrix, the Barry County Sheriff (Sheriff), levied execution on Plaintiff's farm and published a notice of sale.

The execution sale was held on July 13, 1994. The Sheriff sold the land in three tracts: Tract 1 was 420 acres which sold to Troy and Mary Ann Berry for $25,000; Tract 2 was 22 acres which sold to the same purchasers for $4500; and Tract 3 was 210 acres, containing buildings and a residence, which sold for $45,000 to Johnny and Martha Berry. This suit was filed two days later. During the pendency of this suit, Plaintiff's son, Jeff T. Sisk, was appointed as Plaintiff's limited conservator and he was substituted as a party for his father. A judgment was entered, after a trial before the court, denying the relief sought by Plaintiff. This appeal followed.[1]

In court-tried cases, we review the case upon both the evidence and the law, giving due regard to the opportunity of the trial court to judge the credibility of witnesses. Rule 73.01(c).[2] The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law.

1. Prior to the McIlroy judgment, Plaintiff executed a warranty deed conveying the property in question to his children and a family-owned corporation, but retaining a life estate in himself. The deed was not recorded until after the judgment was entered. The Berrys brought Plaintiff's children and the corporation into the instant case as third-party defendants. In a counterclaim against Plaintiff, and in the third-party petition, the Berrys sought to quiet title in themselves, and a decree in ejectment. The trial court found for the Berrys on those claims in the same judgment in which it denied relief to Plaintiff. While Plaintiff and the third-party defendants appealed from the judgment, there is no issue raised relating to that portion which quieted title in the Berrys and ordered ejectment. In fact, Plaintiff, in his brief, says: "Appellants appeal from the judgment that did not grant the equitable relief requested in the Petition to Set Aside Deed." Because that relief was sought only by Plaintiff, we will refer, in this opinion, to the contentions relating to that claim. For this reason, we refer to "Plaintiff's" contentions and evidence.

2. All references to rules are to Missouri Rules of Civil Procedure (1996), and all references to statutes are to RSMo 1994, unless otherwise noted.

*Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In his first point relied on, Plaintiff contends that the trial court erred in not setting aside the sheriff's deeds because the consideration was "so inadequate that it should have shocked the conscience of the court and therefore be deemed to constitute a constructive fraud." He points to the fact that the purchasers at the execution sale paid a total of $74,500, but that he presented evidence that the property had a total value of $480,000.

Plaintiff relies principally on *Brookshire v. Powell,* 335 S.W.2d 176 (Mo.1960). He argues that in *Brookshire* the property sold at an execution sale for $2300, the execution sale purchasers admitted that the reasonable market value of the property was $40,000 to $45,000, the owner valued it at $70,000, and the appellate court said:

> [T]his great disparity between the market value and the $2,300 bid at which the property sold rendered the consideration so inadequate as to shock the conscience of the court, and thus constitute a constructive fraud.

*Id.* at 181. In *Brookshire,* however, the owner's successful bid for the property at the execution sale was $10,000, but he later refused to pay that amount to the sheriff. Instead, he tendered the amount of the judgment which was the basis of the execution. The sheriff proceeded immediately to re-sell the property. The court noted that there was only one bid at the second sale and that the purchasers were the attorneys for the sheriff. The trial court had entered an interlocutory decree granting the owner's request to set aside the deed, conditioned upon the owner reimbursing the purchasers for the purchase price plus interest, as well as the expenses of the first sale. The owner refused to do so, and the trial court found the issues in favor of the purchasers and dismissed the owner's petition. The appellate court reinstated the same conditions and ordered that if the owner complied within fifteen days, the sheriff's deed would be set aside, but otherwise the trial court's judgment was to be affirmed.

It is important to note that in *Brookshire* the amount of the bid was not the only circumstance considered by the court in concluding that the deed should be set aside, albeit under certain conditions. Here, unlike *Brookshire,* the record fails to indicate any relationship between the Sheriff and the purchasers, there was active bidding by other people who had knowledge of real estate values in the area, and there was only one sale which was apparently held when advertised or in accordance with local custom.

We find that other cases are more persuasive in deciding the instant point. In *Koester v. Koester,* 543 S.W.2d 51, 55 (Mo.App. E.D. 1976), the court noted that the sale in question was a "forced sale," and said:

> Market value may be considered in determining the adequacy of the sale price but it is not the measure of adequacy. The test of adequacy in a judicial sale is the price received in comparison with what the property would bring in a fair sheriff's sale.

In *Yokley v. Wian,* 877 S.W.2d 179, 182 (Mo.App. W.D.1994), the court also acknowledged the "fair sheriff's sale" test as being the appropriate measure for analyzing the adequacy of the purchase price at an execution sale. In doing so, the court noted the elements of a forced sale which tend to inhibit buyers. It said:

> A fair sheriff's sale price would be a price within a range of prices a neutral person would be willing to pay, at a forced sale, for property conveyed, not by warranty deed, but rather by a sheriff's deed, subject to known and unknown encumbrances, assessments, and potential liens; with an uncertain quality or condition of any existing structures; with potential latent problems and unknown liabilities; considering the amount a person would need to invest in necessary repairs or clean-up; with risk of legal process and expense to secure possession or clear title; and with uncertainty of potential concealed environmental hazards.

> In short, the price at a fair sheriff's sale would be a price in the range a neutral outsider, under no constraint to buy, would reasonably be willing to risk paying at a

forced sale conducted by open bidding. Property sold at a sheriff's sale will not normally sell for a price approaching its fair market value. "Always to be considered is the underlying need for judicial sales to be final." (citation omitted)

*Id.* at 183.

In the instant case, Plaintiff acknowledged the "fair sheriff's sale" standard by pleading that the purchase price was "unconscionably low when compared with what the property would bring at a fair Sheriff's sale." There was also evidence that bidders at the sale knew that Plaintiff was in possession of the property, and of the potential problems in getting title and possession. They testified that these factors affected the amounts they were willing to pay for the property.

The trial court, in its findings of fact, concluded, in part, that it found no irregularities or bad faith in the conduct of the sale; there was no fraud in connection with the sale; there was no intentional act misleading or unduly influencing another in connection with the sale; the prices paid for the property were within the range of a "fair Sheriff's sale"; the sale was open, fair and public; neither the Sheriff nor any of the purchasers did anything to prevent any of the property from selling for a higher price; the persons present at the sale were knowledgeable of land values in Barry County; the sale was conducted in accordance with applicable laws; and the prices paid for the property were not so grossly inadequate as to shock the conscience of the court.

■ Approval of judicial sales rests largely in the discretion of the trial court, and its action in confirming or setting aside a sale will not be interfered with on appeal unless there is a manifest abuse of discretion. *Koester v. Koester,* 543 S.W.2d at 53. Under the standards discussed above, we are unable to conclude that the trial court was guilty of a manifest abuse of discretion in refusing to set aside the deeds based on the inadequacy of the consideration. Point I is, therefore, denied.

■ In the second point, Plaintiff bases his claim of error on the contention that the property, which contained his residence, was subject to the homestead exemption pursuant to §§ 513.475–.490,[3] and the sale was void because the Sheriff did not "determine and designate a homestead through the appointment of three appraisers" as required by § 513.480.[4]

■ Plaintiff, however, did not plead this theory in his petition. Courts have power to decide only those questions which are presented by the parties in their pleadings. *Bryant v. Price,* 893 S.W.2d 856, 859 (Mo. App. S.D.1995). It is true that Rule 55.33(b) permits the amendment of pleadings to conform to the evidence if an issue is tried by the express or implied consent of the parties. In the instant case, however, we are not persuaded that the issue presented by this point was tried by the express or implied consent of the parties.

■ In order for evidence admitted without objection to amend the pleadings by implied consent, that evidence must bear only on the new issue and not be relevant to an issue already in the case. *Jefferson v. Bick,* 872 S.W.2d 115, 120 (Mo.App. E.D.1994). In the instant case, there was evidence that a part of the property was occupied by Plaintiff. This was relevant to the price a fair

---

**3.** Section 513.475 provides, in part:

 1. The homestead of every person, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the value of eight thousand dollars, which is or shall be used by such person as a homestead, shall ... be exempt from attachment and execution.

**4.** Section 513.480 provides, in part:

 Whenever an execution shall be levied upon the real estate of any person, of which such homestead may be a part, or upon such part of any homestead as may be in excess of the limitation of the value thereof created in section 513.475, such person shall have the right to designate and choose the part thereof to which the exemption created in section 513.475 shall apply, not exceeding the limited value; and upon such designation and choice, or in case of a refusal to designate or choose, the sheriff levying the execution shall appoint three disinterested appraisers, who shall ... fix the location and boundaries of such homestead, and the sheriff shall then proceed with the levy of such execution upon the residue of such real estate....

sheriff's sale might bring, in that occupancy of the property bears on the expense and trouble a purchaser may experience in gaining possession. Evidence that the Sheriff did not personally examine the property or have it appraised prior to the sale would likewise be relevant to an inquiry about the amount which would be realized from a fair sheriff's sale. The issue of whether the property brought what it should have at a fair sheriff's sale was a pleaded issue. This is distinct, however, from the issue raised in this point. Consistent with this conclusion is the finding of the trial court that any issue of whether the Sheriff failed to have the property appraised "was not raised by the pleadings ... nor were the pleadings amended by implied or expressed [sic] consent."

An appellate court will not, on review, convict a lower court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36 (Mo.banc 1982). Point II is, therefore, denied.

■ In Point III, Plaintiff contends that the conveyance of the 420–acre and 22–acre tracts to Troy and Mary Ann Berry was beyond the statutory authority of the Sheriff and should be set aside. This point is premised on the argument that the Sheriff only had authority under § 513.210 and Rule 76.11 to "sell so much ... as will be sufficient to satisfy [the] execution." Plaintiff argues that because the execution was for $42,-659.60,[5] the Sheriff should have refused to convey the first two tracts, which sold for a total of $29,500, after the third tract sold (to Johnny and Martha Berry) for $45,000.

In support, Plaintiff cites Rule 76.11 and § 513.210, which contain similar provisions providing that when an execution is levied on real estate, the levying officer shall divide the property, if susceptible to division, and "sell so much thereof as will be sufficient to satisfy such execution." He also cites *Griggs v. Miller,* 374 S.W.2d 119, 124 (Mo.1963), for the proposition that the sheriff conducting an execution sale is the agent of both the property owner and the judgment creditor, and that only a part shall be sold, if it can be

divided without prejudice and will cover the debt and costs. In *Griggs,* however, the owner had communicated to the sheriff the portion of the property which he wished to have sold to cover the debt, but that request was not followed.

In the instant case, the record does not indicate a request from Plaintiff to the Sheriff that any particular portion of the property be sold first. This was despite § 513.100, which provides:

> The person whose goods, chattels and real estate are taken in execution may elect what part thereof shall be first sold; and if he shall deliver to the officer having charge thereof a statement, in writing, of such election, three days before the day appointed for the sale, stating specifically what goods, chattels and real estate he desires to be first sold, and so on, until the execution be satisfied, the officer shall proceed according to such election, until sufficient money shall be made to satisfy the amount in the execution specified and costs.

Rule 76.12 also provides that a person whose property is levied on may elect the order of sale by a written statement to the sheriff at least three days before the day of sale.

There is no dispute that Plaintiff had actual notice of the impending sale. We do not find that there was a manifest abuse of discretion in the trial court's refusal to set aside the first two deeds upon the basis argued in this point. It is denied.

■ In the fourth point relied on, Plaintiff posits error in the trial court's exclusion of the testimony of a psychologist. When the psychologist's testimony was offered, Defendants objected, claiming that there was no pleaded issue of capacity. Plaintiff's counsel responded that the testimony was being offered to show Plaintiff's competence at the time of the sale. He also indicated that it was admissible because he claimed that Defendants had implied that Plaintiff's conservatorship had no basis.

· After the trial court sustained Defendants' objection, Plaintiff made an offer of proof by submitting the psychologist's report after the

---

**5.** This amount apparently included interest and costs.

psychologist testified that her testimony would be as contained in the report.[6] The report related to an examination which the parties agree was made on October 4, 1994, apparently in connection with proceedings for the appointment of the limited conservator for Plaintiff, which occurred on February 22, 1995. In this regard, we note that the execution sale in question occurred on July 13, 1994.

Plaintiff's point relied on is based on two contentions: First, Defendants raised an issue about the validity of the conservatorship, and Plaintiff should have had the opportunity to present expert testimony explaining that it was granted due to his mental disabilities; and second, the conservator was substituted as a party upon motion of Defendants, "thereby placing the capacity of the protectee in issue."

Plaintiff cites no authority in support of his point relied on other than Rule 55.33(b), which authorizes the trial court to permit amendments to pleadings if evidence is objected to on the ground that it was not within the pleaded issues. He makes no effort to explain how that rule supports the stated basis of his point relied on. We note, however, that the record does not reflect that Plaintiff sought to amend his pleadings to plead an issue relating to his capacity.

It is the appellant's obligation to cite appropriate and available precedent if he expects to prevail. *Thummel v. King,* 570 S.W.2d 679, 687 (Mo.banc 1978). If no authority is available, an explanation should be made for the absence of citations. *Id.* Where the appellant neither cites relevant authority nor explains why authority is not available, the appellate court is justified in considering the point abandoned. *Shiyr v. Pinckney,* 896 S.W.2d 69, 71 (Mo.App. S.D. 1995).

Rule 84.13(c) permits us to examine for plain error affecting substantial rights, although not preserved, when we find that manifest injustice or miscarriage of justice has resulted therefrom. We have made such an examination with reference to this point and find no plain error. A trial court has broad discretion in the admissibility of evidence, and evidentiary rulings will not be disturbed on appeal in the absence of an abuse of that discretion. *Herrera v. DiMayuga,* 904 S.W.2d 490, 492 (Mo.App. S.D.1995). Judicial discretion is abused when the ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable people can differ about the propriety of the action taken, it cannot be said that the trial court abused its discretion. *Woodward v. Nyland,* 915 S.W.2d 361, 365 (Mo.App. S.D.1996).

In the instant case, Plaintiff does not argue or explain how the evidence in question would have required a different result in this case. Likewise, our review fails to disclose any indication that it would. We find no plain error based on the issue presented in the point relied on.

Contrary to the point relied on, the bulk of Plaintiff's argument under this point relates to his contention that the psychologist's testimony was relevant to his mental condition at the time of the sale in that it explains why he did not take some action at that time. Aside from the fact that the only questions for appellate review are those identified in the points relied on (*Amyx v. Collins,* 914 S.W.2d 370, 373 (Mo.App. S.D.1996)), we note that the report which constituted the offer of proof contained no opinions concerning Plaintiff's mental condition at the time of the sale. For both of these reasons, this portion of Plaintiff's argument is without merit. Point IV is denied.

In his fifth and final point on this appeal, Plaintiff contends that the deeds should have been set aside because the Sheriff failed to follow statutory requirements in connection with the execution. Specifically, he argues that the writ of execution was not issued until after the Sheriff began publishing notice of the sale, and, contrary to § 513.190, the sale was held five days before the return date of the execution, rather than the required minimum of at least fifteen days.

---

**6.** There is no issue concerning the manner in which this offer of proof was made.

McIlroy requested an order of execution on June 7, 1994. The Sheriff executed the notice of sale on the same day and commenced its publication on the following day. The writ of execution was not issued by the Circuit Clerk until June 17. Because Rule 76.06(a) provides that a levy upon real estate is made by endorsing its description on the execution, Plaintiff argues that there could not have been a levy and valid notice of sale until after the writ of execution was issued.

 Without deciding the validity of this issue on the merits, we note that Plaintiff raises it for the first time on appeal. As indicated in our discussion of Point II, an appellate court will not convict a trial court of error on an issue which was not put before it to decide. *See also First Bank Centre v. Thompson*, 906 S.W.2d 849, 859 (Mo.App. S.D.1995). Additionally, before we set aside an execution sale for noncompliance with procedural requirements, "we must determine (1) whether the noncompliance undermines the purpose of the rule, and (2) whether the complaining party was prejudiced by the noncompliance." *Heintz v. Woodson*, 758 S.W.2d 452, 454 (Mo.banc 1988). Plaintiff, however, makes no effort to demonstrate how he was prejudiced by the actions complained of, and we perceive none.

Plaintiff also points out that § 513.190 provides that "[i]f there be sufficient time, the officer shall appoint the day of sale at least fifteen days before the return day of the execution." Here, the execution sale was held on July 13, only five days before the return date of July 18.

First, we note that, like the other portion of this point, this argument is raised for the first time on appeal, and Plaintiff makes no effort to demonstrate prejudice. For those reasons alone, this portion of the point is without merit. We also note, however, that Rule 76.04 provides that an execution shall be returned not less than thirty days nor more than ninety, and that:

> When an execution is levied upon property and a sale is not made before the return date of the execution, the execution and any lien created thereby shall remain in force for one hundred eighty days after the

issuance of the execution or until the property is sold, whichever period is shorter.

This point is denied.

Because we have concluded that Plaintiff's points on appeal are without merit, we need not discuss issues raised by Defendants concerning Plaintiff's failure to join indispensable parties, and the effect of the other portion of the judgment quieting title in them and granting their request for an ejectment. The judgment is affirmed.

BARNEY, P.J., and PREWITT, J., concur.