257 S.W.2d 689 (1953)
WIESER et ux.
v.
LINHARDT.
No. 43114.
Supreme Court of Missouri, Division No. 2.
May 11, 1953.
David E. Horn, St. Louis, for appellant.
Philip A. Foley, Clayton, for respondents.
LEEDY, Presiding Judge.
In this action to set aside a deed, decree went for plaintiffs as prayed, and defendant, the grantee, appeals. Because of the death of the court reporter transcription of his shorthand notes of the oral evidence offered at the trial became impossible, and in this situation the parties have prepared and signed an agreed statement of the case under § 512.120, RSMo 1949, V.A.M.S.
The challenged instrument is a sheriff's deed, made pursuant to a sale under an execution upon a judgment of the Circuit Court of St. Louis County. The action out of which that execution and sale arose was one to enforce collection of annual maintenance assessments for the years 1935-1939 (both inclusive) levied by the plaintiffs therein, the trustees of Davis Place, a subdivision in St. Louis County, under powers conferred upon them by an applicable trust agreement and indenture of restrictions. The defendants there were the plaintiffs here, Florian J. and Selma Wieser, husband and wife, the owners, as *690 tenants by the entirety, of an unimproved lot in that subdivision against which the assessments mentioned had been levied, and which was conveyed to defendant by the deed now sought to be set aside. No question arises as to the power of the trustees of Davis Place to levy such assessments, nor of the regularity and validity of the proceedings leading up to and including the judgment under which the execution sale was held. That judgment, rendered upon personal service, was obtained September 9, 1941, by default, and the execution sale thereunder followed on March 9, 1942. The judgment was for the sum of $170.68 and costs. The amount of defendant's bid at which the lot was knocked off and sold to her was $289.97, the precise sum required to satisfy the judgment in full, including all costs. Plaintiffs herein, the Wiesers, were residents of the City of St. Louis for many years both before and after the sale. The wife, Selma, died during the pendency of this action, and that fact having been suggested, the action proceeds in favor of the surviving plaintiff-husband under § 507.100, subd. 1, (2), RSMo 1949, V.A.M.S.
The chancellor found that the amount of defendant's bid was so grossly inadequate as to amount to fraud, and decreed that for such reason and others the sale should be, and it was, set aside, but upon the condition that defendant be reimbursed in the sum of $1,663.79 for her outlays for taxes and other expense. The effect of the agreed statement is to eliminate from appellate review, because untenable, all grounds assigned by the decree for cancellation of the deed except that in relation to inadequacy of consideration as constituting fraud, so that the question presented on this appeal is a very narrow one, and is thus tersely stated in plaintiff's (respondent's) brief: "The only question at issue is whether the sum paid by the appellant at the sheriff's sale was so grossly inadequate and unconscionable as to amount to fraud." In this situation, it is apparent that the value of the lot at the time of the sheriff's sale is the pivot upon which the case necessarily turns. The whole of the recitals of the agreed statement with respect to that question are these: That three qualified experts, testifying for plaintiffs, fixed such value at "$5,000, $6,000 and $6,000, respectively;" and that defendant's (one) qualified expert testified that the lot was "worth from $3,000 to $3,600" at that time. The only other reference to value is that the plaintiff-husband testified that he "purchased the lot in 1929 or 1930 for $10,000, paying $5,400 in cash and giving in exchange a piece of property he valued at $4,600." On this conflicting evidence the chancellor found the lot's value to be $6,000. In the absence of an agreement fixing another sum, or a transcript of the testimony from which to make our own independent finding on the issue, we should, and do, defer to that finding. However, from the sum so found must be deducted the amount of the other and prior charges against the lot aggregating $345.74, thus reducing its net value to $5,654.26, so that the sale price ($289.97) was 5.12% of its value.
"It is the general rule that a sheriff's sale of real estate under execution will not be set aside on mere inadequacy of consideration. However, an exception to said rule is stated by a standard text as follows: `Inadequacy of consideration, if it be so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is a ground for cancelling a transaction. In such cases the relief is granted, not on the ground of inadequacy of consideration, but on the ground of fraud as evidenced thereby'. Kerr on Fraud and Mistake, 161, citing many authorities." Ellis v. Powell, Mo.Sup., 117 S.W.2d 225, 226.
Bussen Realty Co. v. Benson, Banc, 349 Mo. 58, 64, 159 S.W.2d 813, 816, citing such cases as Mangold v. Bacon, 237 Mo. 496, 522, 141 S.W. 650, and Ellis v. Powell, supra, points out that "this court has developed the rule * * * that a consideration paid at a tax sale (in almost every instance a judicial sale) which is so grossly inadequate as to shock the conscience, by itself establishes fraud. * * * We find no other expressed reason for this court's application of the rule to tax cases than its refusal to permit property to be so sacrificed as to amount to confiscation."
*691 The sole question for our determination is whether the disparity between sale price and value is such as to warrant application of the rule to which reference has just been made. A quick glance at some of the cases decided subsequent to (and all have followed the decision in) the Bussen case, supra, will disclose that, under the condemnation of that rule, tax sales have been set aside in instances where the sale price ranged from 2.08% to 8½ of the value of the property. Percentagewise, the relation between sale price and value of premises is shown in this tabulation of relatively late cases selected at random: Rudd v. Scott, 351 Mo. 1206, 175 S.W.2d 774, 2.08%; Adams v. Smith, 360 Mo. 1082, 232 S.W.2d 482, 3%; Ellis v. Powell, Mo. Sup., 117 S.W.2d 225, 3.57%; J. C. Nichols Inv. Co. v. Roorbach, Mo.Sup., 162 S.W.2d 274, 4%; Swain v. Boeving, Mo.Sup., 175 S.W.2d 591, 5.21%; Johnson v. McAboy, 350 Mo. 1086, 169 S.W.2d 932, 5.27%; Kelso v. Hubble, Mo.Sup., 163 S.W.2d 926, 7.22%; Davis v. Johnson, 357 Mo. 417, 208 S.W.2d 266, 8.5%.
It is true that in most of these instances the sale price was not sufficient to pay the taxes, or taxes and costs, but in view of the reason for the application of the rule as to inadequacy of consideration, as pointed out in the Bussen case (i. e., the refusal of the courts to permit property to be so sacrificed as to amount to confiscation), the sufficiency of the bid to pay the taxes is not the controlling factor. Harrison v. Coomber Realty & Investment Co., 359 Mo. 862, 224 S.W.2d 63 (cited by defendant on this question), does not rule to the contrary. If it had, the fact that the bid there was sufficient to pay the taxes would have rendered it unnecessary to determine whether, despite that fact, the sale price was so inadequate as to constitute a fraud in law. In some cases other grounds have been coupled with that here relied on, but it may be noted that in the last case cited, Davis v. Johnson (where the sale price represented 8½% of the value of the land), the sole ground for setting aside the sale was that of gross inadequacy of consideration. Without pausing to analyze defendant's cases, Swabey v. Boyers, Mo.App., 71 S.W.2d 110; Sheppard v. Enright, mo. Sup., 188 S.W. 186; Dougherty v. Gangloff, 239 Mo. 649, 144 S.W. 434; Martin v. Castle, 193 Mo. 183, 91 S.W. 930; Briant v. Jackson, 99 Mo. 585, 13 S.W. 91, it may be said that all of them antedate the Bussen case, and are distinguishable from the much later and controlling cases we have cited.
It follows that the judgment must be, and it is, affirmed.
All concur.