**Hubert E. BOXWELL, Appellant,**

**v.**

**Elvada BOXWELL, Respondent.**

**No. 25099.**

Kansas City Court of Appeals.

Missouri.

June 2, 1969.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 6, 1969.

Hollis Hartley, Lee's Summit, for appellant.

Lee E. Cisel, Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

The parties hereto are Hubert Elmar Boxwell, appellant-plaintiff below, and Elvada Boxwell, respondent-defendant below, who were once husband and wife and, as such, jointly owned as tenants by the entirety, two parcels of real property, one a residence and the other a business property. Both properties are situated in the City of Lee's Summit, Missouri.

This action arose out of a judicial sale of the business property under a judgment of partition. The residential property is not involved in this appeal. It was sold in partition on the same day and at the same time and place and by the same Special Commissioner under another partition judgment.

No property settlement having been made at the time of the divorce, the appellant here, as plaintiff below, commenced this action in partition on April 1, 1966. Respondent, defendant below, thereafter filed an amended answer to appellant's petition and also a cross claim for partition. On November 17, 1967, judgment in partition was rendered on appellant's original petition. The court appointed a special commissioner to sell the property involved.

On March 21, 1968, the special commissioner sold both the business property and the residential property at public sale under directions in separate partition judgments. The business property was sold to appellant, who was the only bidder for $5,000. The building had been appraised at $12,500. After the special commissioner filed his report of the sale to appellant, respondent filed her objections to the confirmation of the sale claiming that the price was unconscionably low amounting to a sale at "ruinous sacrifice" and that the appellant "chilled" the sale and prevented competitive bidders from attending the sale.

Thereafter, on June 3, 1968, the court sustained the objections of respondent to the confirmation and approval of the Special Commissioner's sale, and ordered a resale of the property. Plaintiff appealed.

At the hearing of the objections to the confirmation of the Special Commissioner's sale the respondent's first witness was Harry Ellsworth who testified that his business was investments, real estate and building, and that he traded, bought and sold real estate. He testified that he knew of the sale of the business property scheduled for March 21, 1968; that he wanted to know about the building and telephoned Mr. Boxwell, the appellant, and discussed the size of the building, its condition, occupancy and the possibility of Mr. Boxwell becoming a tenant if Ellsworth purchased the building at the coming sale. Mr. Ellsworth said he told Mr. Boxwell that he thought the building might be worth $10,000, maybe eleven or twelve" and that Mr. Boxwell told him he, Boxwell, was prepared to bid up to $12,500 for the building, if not more. Mr. Ellsworth testified that he did not attend the sale because he gained from conversation with Boxwell that Boxwell was going to bid higher than he, Ellsworth, was willing to bid. Mr. Ellsworth further testified that if the property was resold he would likely be a bidder. He testified that he did not go look at the property because he was discouraged.

Elvada Boxwell, respondent, testified that she attended two partition sales on March 21, 1968, being the sale of the business property and the residential property; that the sale of the business property was held first and that Mr. Boxwell, appellant, bid $5,000 for the business property, which was the only bid made. Mrs. Boxwell testified that she expected three bidders to attend the sale to bid for the business property, including Mr. Ellsworth, but none attended. Mrs. Boxwell further testified that she borrowed from the Farmers Trust Company the sum of $3,500 so she could bid on her house (the residential property) with the understanding with the bank that she would use this $3,500 for no other purpose. She testified that she did have the $3,500 with her at the sale of the business property, but did not use it to bid on the business property in order to keep faith with the bank that furnished her the money. She testified that she made no effort to borrow money to bid on the business property because she thought it would go high enough because there would be enough bidders present. She testified that the business building had been appraised

at twelve thousand five hundred dollars by Mr. Cecil Shopen. She also testified that if the business property was resold she was prepared to borrow money and would open the bidding with a $10,000 bid.

After asserting under "I" of his "Points and Authorities" that: "Inadequacy of Consideration in and of itself will not justify setting aside a judicial sale", appellant contends that: "II The ruling of the court below was a clear abuse of the court's discretion."

It should be kept in mind that the issue here must be confined to a judicial sale as distinguished from a non-judicial sale, and must be further limited to a judicial sale which had not yet been approved or confirmed by the court having control of a sale made by an officer of the court.

Eight cases are cited by appellant under "I" of his Points and Authorities. Seven of these cited cases involve non-judicial tax sales made by County Collectors. One of the eight cases apparently involved a judicial sale and, if so, it was one that had already been confirmed by the court rendering the tax foreclosure judgment.

Appellant under his Point II cites seven cases. Six of them do not involve either a judicial or a non-judicial sale. One case, Smith v. Hill, 3 Cir., 5 F.2d 188, does involve a judicial sale where the trial court refused to confirm the sale because of acts chilling the sale coupled with inadequacy of price. The appellate court held that there was no abuse of discretion and affirmed the ruling of the trial court. Thus that case favors respondent's position.

In 30A Am.Jur. pp. 957, 958, it is said:

"A judicial sale should be so conducted as to secure the best price that can fairly be had for the property sold, and to that end, full, free, and fair competition should be secured. It is therefore established that any act or statement—whether of the auctioneer, of the owner, of the party selling, or of third parties as purchasers, and whether made or committed publicly at the sale or privately—which prevents a free, fair, and open sale, or stifles or 'chills' the sale, in that it diminishes or prevents free competition among the bidders, is contrary to public policy, vitiates the sale, and constitutes ground for setting it aside upon the complaint of the party injured. This is especially true where the purchaser has an interest in the land which is the subject of the sale and purposely resorts to such practices in order to obtain the property for less than he otherwise would be able to do. False statements, as to the title to the property, or as to the fixed encumbrances upon it, which deter others from bidding and cause a sacrifice of the property will vitiate the sale. A sale may be set aside where a purchaser obtained the property for less than he otherwise would, by means of fraud, which prevented the attendance of bidders, or by means of artifice which deterred those in attendance from bidding, or as the result of an appeal either to the sympathy or cupidity of the bidders. In fact, in some circumstances a sale may be set aside even though the acts or statements which chilled bidding were true and were inspired by praiseworthy motives."

In 50 C.J.S. Judicial Sales § 28 at page 621, it is stated that: "Inadequacy of price will have a greater influence toward inducing a Court to disapprove a judicial sale where the objection is urged in opposition to confirmation than where it is urged as a ground for setting aside the sale after confirmation."

And in 30A Am.Jur., at page 971, it is said: "It is the general rule that confirmation of a judicial sale rests largely within the discretion of the trial court, and will not be reviewed except for manifest abuse of discretion."

The Missouri cases likewise announce this rule. As stated in the case of Borchers v. Borchers, 352 Mo. 601, 179 S.W.2d 8, 1. c. 12 "A confirmation or rejection of

a sale in partition is within the sound discretion of the trial court. Pomeroy v. Allen, 60 Mo. 530; Patton v. Hanna, 46 Mo. 314; Tatum v. Bernard, Mo.App., 49 S.W.2d 1083. It is the general rule that inadequacy of price is not sufficient ground for refusing to confirm a sale in partition, unless the inadequacy is so gross as to raise the presumption of fraud. Should the price be inadequate and should there be circumstances attending the sale tending to cause such inadequacy, or where the rights of infants are jeopardized, the general rule does not apply."

And it is said in Wauchope v. McCormick, 158 Mo. 660, 666, 59 S.W. 970, 972: "Sales under order of the court in partition are made subject to the approval of the court. Burden v. Taylor, 124 Mo. 12, 27 S.W. 349. The approval of such sales rests largely in the discretion of the court, and its action in setting aside the sale in this case upon the coming in of the report, and before any other interests had intervened, ought not to be interfered with, unless there was manifest abuse of such discretion. (citing cases)"

It is true that appellant denied that he told Mr. Ellsworth that he was prepared "to bid up to $12,500, if not more." However, the trial judge who heard the witnesses and observed their appearance and demeanor on the witness stand necessarily found when he refused confirmation of the sale that appellant did make the statement and that he, Ellsworth, did not attend the sale because he gained from conversation that appellant was prepared to go higher than he was willing to go. It is clear that appellant's statement kept Mr. Ellsworth away from the sale and the result was that appellant bought the property for $5,000, as the first and only bidder. Appellant in his brief attempts to make little of this conversation between himself and Ellsworth. However, instead of "encouraging bidding", as suggested by appellant, it depressed competitive bidding resulting in a sale at an unconscionably low price.

Under the circumstances appearing here, was the sale price inadequate? We think it was. In the *Wauchope* case, *supra*, where a judicial sale was chilled, our Supreme Court considered a bid of $1,030 to be inadequate where the property was worth from $1,750 to $2,000.

We are convinced that the trial court did not abuse its discretion in refusing to confirm the sale. The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court, and the judgment is affirmed. All concur.