Senatro W. DiLEO et ux., Plaintiffs-Respondents,

v.

James T. HUNTER et al., Defendants,

Delbert Hunter, Appellant,

No. 35108.

Missouri Court of Appeals,
St. Louis District, Division One.

Jan. 15, 1974.

A. H. Juergensmeyer, Warrenton, Rosenblum & Goldenhersh, Jack M. Mazur, Clayton, for plaintiffs-respondents.

Ervin D. Davis, St. Charles, for appellant.

SIMEONE, Judge.

This is an appeal from an order of the circuit court of Warren County entered November 27, 1972 overruling the appellant-Delbert Hunter's motion, filed on October 16, 1972, to set aside a partition sale and order a new sale. The trial court made findings of fact and conclusions of law.

These proceedings commenced on May 19, 1972 by the filing of a petition for partition of land alleging that the plaintiffs, Dr. and Mrs. DiLeo and several defendants including Delbert Hunter and his wife Marie were tenants in common of some 149 acres of land in Warren County. The petition prayed that the land be partitioned, sold and divided among the respective owners. In due time the court decreed that the land be sold and the proceeds divided. On October 7, 1972 a partition sale was conducted by the deputy sheriff, and the property was sold to Dr. DiLeo for $37,500.00 as the highest bidder.

On October 16, 1972, Delbert Hunter moved to set aside the sale and order a new sale because Mr. Hunter believed the $37,500 bid was his bid and the deputy sheriff refused to reopen the bidding. Hunter also contended that §§ 528.370 and 513.225, RSMo, V.A.M.S., were not complied with.[1] Hearing on the motion to set aside the sale was held on November 9, 1972 in Warren County.

The evidence on the motion to set aside the partition sale is contradictory. There were several people at the sale on October 7, 1972. Mr. Hunter, who owned a $1/18$ interest in the property, testified that he indicated to the deputy sheriff who was conducting the sale that he was bidding in terms of "and five [hundred]" and that he bid $37,500 for the property and the sheriff "struck down the property." Hunter stepped forward thinking he was the high bidder and was prepared to deposit ten percent of the bid, but the sheriff indicated that Hunter was not the high bidder and that it was "the man in the rear"—Dr. DiLeo. Mr. Hunter in his motion and upon hearing offered to and was prepared to bid the sum of $41,250 for the property. He stated that the sheriff would not accept his tender of ten percent—because "he had closed the sale."

Dr. DiLeo, the deputy sheriff, and the clerk of the partition sale testified in the respondent-DiLeo's case. Dr. DiLeo testified that his final bid was $37,500; that prior to that bid the bid was $37,000 made by Mr. Hunter; that no higher bid was made; that he indicated his bid by holding up his hand and nodding "another Five Hundred." He then went to the sheriff's office to offer the ten percent. He testified that his earlier bid was $36,500, that

1. The trial court found that having appeared at and participated in the sale, the defendant Hunter could not have been prejudiced by a failure to receive personal notice of the sale. We agree.

Mr. Hunter bid $37,000, and then he made a bid of $37,500. He heard Mr. Hunter tell the sheriff that Hunter thought he was the last bidder.

The deputy sheriff who conducted the sale, Borden E. Meyer, testified that Dr. DiLeo was the purchaser at the partition sale and highest bidder by paying $37,500 for the property. The next highest bid was $37,000 made by Mr. Hunter. He stated he sold the property "to the man in the rear, Dr. DiLeo." He acknowledged that Mr. Hunter came up to him and indicated, "That was my bid," and he said, "No, Thirty-Seven Thousand was your bid; Thirty-Seven Five was Dr. DiLeo's bid." He denied that Mr. Hunter tendered any money on the day of the sale. When he announced $37,500 three times, he looked at Mr. Hunter who "didn't do nothing."

The clerk testified that the bidding progressed from $36,000 to $36,500 to $37,000 and finally to $37,500. She listed the final bid as that of Dr. DiLeo when the sheriff announced his name.

On November 27, 1972, the trial court found that DiLeo and Hunter were active bidders at the sale, that shortly before the sale was completed Hunter bid $37,000 and DiLeo then bid $37,500 following which the deputy sheriff "looked at defendant Hunter and asked for a higher bid, but received no indication from said defendant that he desired to bid higher." The court found that DiLeo was the highest bidder at said sale and was entitled to receive a deed from the sheriff, and that the sheriff's report of sale, filed with the court "should be approved and the sheriff ordered to execute a deed to plaintiff DiLeo." The court in its order overruled Hunter's motion to set aside the sale and order a new sale, approved the sheriff's report of the sale, and ordered the sheriff to make a deed to DiLeo and distribute the net proceeds to the persons entitled thereto.

The appellant Hunter contends that the trial court erred in not setting aside the sale because of the "irregularity and mistake during the sale coupled with appellant's offer and bid made to the court prior to the confirmation" of the sale. He argues that his was the final bid and he is therefore to be recognized as the highest bidder and the purchaser of the property, or at least that where two persons claim to offer the highest bid reached, it is proper for the person conducting the sale to put the property up again. Implicit in his argument also is that the sale price was inadequate.

This cause was tried to the court. In such instance, while we review the matter de novo and reach our own independent judgment, we defer to the opportunity of the trial court to judge the credibility of the witnesses and we will not set aside the findings and conclusions of the trial court unless they are clearly erroneous. Rule 73.01(4). Another general principle guides us as an appellate court in the resolution of this proceeding. The confirmation or rejection of a sale in partition is within the sound discretion of the trial court and such confirmation or rejection will not be disturbed on appeal unless there is a manifest abuse of discretion. Boxwell v. Boxwell, 444 S.W.2d 510 (Mo.App.1969); Borchers v. Borchers, 352 Mo. 601, 179 S.W.2d 8 (1944); Pomeroy v. Allen, 60 Mo. 530 (1875); Wauchope v. McCormick, 158 Mo. 660, 59 S.W. 970 (1900).

Mr. Hunter contends that his was the last bid. This is contradicted by other witnesses. The issue is one of credibility for the trial court to determine. The court was in a better position than we to judge the credibility and the demeanor of the witnesses, and there is ample testimony from which the court could find that DiLeo was the highest bidder.

This is not a case where the price is so inadequate as to raise a presumption of fraud or so as to shock the conscience. Borchers v. Borchers, *supra* at 12. The parties were all adults unlike numerous decisions which set aside the sale

where infants are involved. See, e. g., Wauchope v. McCormick, *supra,* Pomeroy v. Allen, *supra.* The fact that Hunter offered to bid a higher price for which the property sold does not show an abuse of discretion on the part of the trial court. Mere offer of a higher price does not prove the sale price was inadequate, and no showing was made here that the price for which the property was sold was grossly inadequate.[2] A sale at some point must be final and should not easily be reopened for higher bid.

There has been an approval of the sale which rests in the sound discretion of the court. We do not find that the order of the trial court was clearly erroneous.

The order overruling the defendant's motion to set aside the partition sale and to order a new sale is affirmed.

DOWD, C. J., and KELLY, J., concur.

---

2. Borchers v. Borchers, *supra*; Tucker v. Burford, 95 S.W.2d 866 (Mo.App.1936); Tatum v. Bernard, 49 S.W.2d 1083, 1085 (Mo.App. 1932).