**Eugene D. YOKLEY, Respondent,**

v.

**Bruce WIAN, et al., Appellant.**

**No. WD 47105.**

Missouri Court of Appeals, Western District.

May 31, 1994.

Timothy J. Murphy, Kansas City, for appellant.

Dwight D. Sutherland, Jr., Olathe, KS, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and SPINDEN, JJ.

ULRICH, Presiding Judge.

Bruce Wian appeals the judgment of the Circuit Court, exercising its equitable powers, that set aside the execution sale and deed transferring title to two parcels of real estate known as 2505 and 2515 Jackson Avenue, Kansas City.[1]  Mr. Wian claims the

---

1.  The judgment provided that if the sum of $4,500 is not paid to Eugene D. Yokley within

Circuit Court erred (1) in ruling that the sale price at the Court Administrator's sale was inadequate because it applied an incorrect standard, and (2) because the judgment violated the equitable principle that to receive equity one must do equity, by granting equitable relief without requiring Eugene D. Yokley to reimburse Mr. Wian for the value of the improvements Mr. Wian made to the properties after Mr. Wian purchased the properties at the execution sale.

The judgment of the Circuit Court is reversed, and this case is remanded.

On January 22, 1988, judgment in the amount of $6,001.00 plus costs was entered against Respondent Eugene D. Yokley.[2] A writ of execution was ordered, and the Court Administrator of Jackson County levied upon two parcels of property owned by Mr. Yokley located at 2505 and 2515 Jackson Avenue.

On June 22, 1988, the parcels were sold at a public Court Administrator's sale following proper publication of required notices. The 2505 Jackson property sold for $100, and the 2515 property sold for $200. Bruce Wian purchased both of those properties.

On June 22, 1989, Mr. Yokley filed a petition to set aside the sale, naming Mr. Wian as a defendant. In his petition, Mr. Yokley alleged, *inter alia*, that the Court Administrator's sale of his two properties was illegal in that the amount obtained from the sale was not representative of the fair market value of the properties and requested that the sale be set aside.

Trial was conducted on July 18, 1991, at which the jury provided an advisory opinion as to the fair market value of the two properties.[3] The jury determined that the fair market value of the 2505 Jackson property was $1,500.00, and the fair market value of the 2515 Jackson property was $3,300.00.[4]

On August 28, 1991, the parties tried the remainder of the case before the court, sitting in equity, without a jury. Judgment was entered on July 31, 1992. The trial court acknowledged that any encumbrances should be applied after the jury had determined the fair market value of the property at the time of sale. The court's order, however, indicates that it used the fair market value of $4800 without any reduction as the basis to determine adequacy. The trial court found the actual sale price of the properties, when compared with the fair market values, to be "so inadequate as to shock the moral sense and outrage the conscience of this Court."

On August 14, 1992, Mr. Wian filed a motion to vacate the judgment or in the alternative to amend the judgment. However, because the trial court did not rule on the motion, it was deemed overruled after ninety days. Rule 78.06. Mr. Wian appealed.

■ On appeal, the trial court's judgment will be sustained unless there is no substantial evidence to support the trial court's decision, the court's judgment is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

I

■ Mr. Wian first contends the trial court erred in ruling "that the sale price of the property was so inadequate as to shock the moral sense and outrage the conscience of the court," because it applied an incorrect standard to determine "inadequacy." Mr. Wian asserts the court should have compared the price paid at the sale with that which would have been paid at a fair sheriff's sale and not the fair market value. He also challenges the trial court's judgment on the

sixty days following entry of the judgment, the judgment setting aside the sale would be effected. Mr. Wian filed this appeal and the sum of $4,500 has not been paid.

2. The judgment creditors are not parties in this appeal. The judgment creditors did not bid at the execution sale. They apparently did not want to own the property.

3. The jury was instructed that the term fair market value meant the price which the properties in question would bring when offered for sale by one willing but not obliged to sell, and when bought by one willing or desirous to purchase, but who is not compelled to do so.

4. For purpose of this opinion, the two properties will be considered as one unit with a jury-determined fair market value of $4800.

ground the court failed to discount the fair market value of the property by the amount of any liens and encumbrances.[5]

In support of his contention, Mr. Wian cites *St. Louis v. Peck*, 319 S.W.2d 678, 684 (Mo.App.1959), in which the court held the "recognized test of inadequacy, in the absence of statute, is the price received in comparison with what the property would bring at a fair sheriff's sale." *See Wieser v. Linhardt*, 257 S.W.2d 689 (Mo.1953); *see also Robert R. Wisdom Oil Co. v. Gatewood*, 682 S.W.2d 882, 884 (Mo.App.1984) (inadequacy alone will not justify setting aside a judicial sale unless the price is so inadequate that it shocks the moral sense and outrages the conscience). *Wieser* involved an action to set aside a sheriff's deed pursuant to a sale under execution on a default judgment. The sole issue before the court in *Wieser* was whether the sum paid by the appellant at the sheriff's sale was so grossly inadequate and unconscionable as to amount to fraud. *Id.* at 690. The *Wieser* court found the disparity (between the sale price of $289.97 paid by the appellant for the property and the property's net value) was so great as to shock the conscience and to require cancellation of the deed for fraud based upon gross inadequacy of consideration. *Id.* at 690–91. Although the value of the lot had initially been determined to be $6,000, the court noted the amount of "other and prior charges against the lot" must first be deducted to reach a net value which is then compared to the amount paid for the property.[6] *Id.* at 690. The court affirmed the chancellor's decree setting aside the sale upon the condition that the purchaser be reimbursed for her outlays for taxes and other expenses. *Id.*

■ Case law in Missouri equates grossly inadequate amounts paid at forced sales under law, as a "ground of fraud as evidenced thereby." *Wieser*, 257 S.W.2d at 690. Fraud generally requires an intentional act misleading, chilling or unduly influencing another. In the court administrator's sale to Mr. Wian, there are no allegations of any act by any party that could even colorably be termed "fraud" in its general meaning. A nontypical category of fraud is "fraud in law." "Fraud in law is fraud in contemplation of law; fraud implied or inferred by law; fraud made out by construction of law." BLACK'S LAW DICTIONARY 595 (5th ed. 1979). Fraud in law is a type of constructive fraud. *Id.* As it is used to set aside sheriff's sales, fraud in law is a legal fiction fashioned by courts to rectify a perceived "shocking" result in cases where there have not been any evident irregularities or bad acts. "We find no other expressed reason for this court's application of the rule ... than its refusal to permit property to be so sacrificed as to amount to confiscation." *Wieser*, 257 S.W.2d at 690.

■ Mr. Wian is correct in contending that an adequacy analysis in Missouri requires a determination of what the property would bring in a fair sheriff's sale. "Market value may be considered in determining the adequacy of the sale price but *it is not the measure of adequacy.* The test of adequacy in a judicial sale is the price received in comparison with what the property would bring in a fair sheriff's sale." *Koester v. Koester*, 543 S.W.2d 51, 55 (Mo.App.1976) (emphasis added).

■ On remand, the trial court may use, as a starting point, the $4800 determined by the advisory jury to be the fair market value. The court must then look to several variables in arriving at a price range for which this property would sell at a normal fair sheriff's sale. The court must determine that the "sale was open, fair and public; that neither the sheriff nor the purchaser did anything to prevent the property from selling at a higher price and that the property had not 'been sacrificed.'" *Id.* Additionally, the court must discount any and all identifiable and viable encumbrances directly from the fair market value. Next, the court must consider the nature of the risks involved in buying real estate at a sheriff's sale. The identifiable risk factors will further discount the value to arrive at a fair sheriff's sale price range.

---

**5.** Mr. Wian paid $1,439.26 in taxes then due on the properties.

**6.** The net value was $5,654.26.

■ Potential risks that could be considered may include, *inter alia:* unknown or unrecorded encumbrances, liens, or assessments; unidentified title or possessory claims of others; uncertain quality or condition of any existing structures; latent environmental hazards; the potential for legal disputes and legal fees potentially required to obtain or remain in possession or to defend the sheriff's deed; and potential expense required to effectuate needed repairs, cleaning or removal of non-conforming edifices on the property. In forced sales third parties such as Mr. Wian bid without the opportunity to go onto the property and conduct an on-site inspection. Viewing the property from the sidewalk will not reveal the internal conditions or soundness of existing buildings. A buyer at an execution sale takes subject to all prior liens and encumbrances of record. *Bultemeier v. Ridgway,* 834 S.W.2d 896, 897 (Mo. App.1992). Therefore, the rule of caveat emptor applies to a purchaser at an execution sale, *id.,* and a prudent bidder would adjust his bid accordingly.

■ A fair sheriff's sale price would be a price within a range of prices a neutral person would be willing to pay, at a forced sale, for property conveyed, not by warranty deed, but rather by a sheriff's deed, subject to known and unknown encumbrances, assessments, and potential liens; with an uncertain quality or condition of any existing structures; with potential latent problems and unknown liabilities; considering the amount a person would need to invest in necessary repairs or clean-up; with risk of legal process and expense to secure possession or clear title; and with uncertainty of potential concealed environmental hazards.

■ In short, the price at a fair sheriff's sale would be a price in the range a neutral outsider, under no constraint to buy, would reasonably be willing to risk paying at a forced sale conducted by open bidding. Property sold at a sheriff's sale will not normally sell for a price approaching its fair market value. "Always to be considered is the underlying need for judicial sales to be final." *Gatewood,* 682 S.W.2d at 855. "A [sheriff's] sale at some point must be final

and should not easily be reopened for higher bid." *Id.*

Because the trial court applied the wrong standard to determine adequacy, the judgment must be reversed and the case remanded for a proper determination of adequacy. This determination must be based on a comparison of the price paid with a price range of a fair sheriff's sale. If the difference is inadequate but not grossly inadequate, then, in the absence of additional factors of bad faith or irregularity, the sale must not be set aside.

Point one is granted.

## II

Mr. Wian also contends that the trial court's judgment awarding Mr. Yokley $4,500 and requiring payment of that sum within sixty days or the sale and deed of transfer to Mr. Wian would be set aside, violated a basic equitable principle that to receive equity, one must do equity. Specifically, Mr. Wian asserts that if the sale of the properties are to be set aside, Mr. Yokley should be compelled to reimburse Mr. Wian for the amount he expended to improve the properties after the execution sale. *See Koester,* 543 S.W.2d at 55. The trial court properly acknowledged the justice of requiring Mr. Yokley to repay Mr. Wian for said improvements, but determined because Mr. Yokley had proceeded in *forma pauperis,* he would be unable to pay Mr. Wian. The court's determination of $4,500 is simply the "fair market value" as determined by the jury, minus the three hundred dollars Mr. Wian paid at the execution sale. Because the trial court erred in its method of arriving at a fair sheriff's sale price, *a fortiori,* the sum of $4,500 would be an improper amount. However, the result in point one avoids the necessity of further addressing point two.

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.

All concur.