**Michelle Marie HOLLIDA, Appellant,**

v.

**Billy George HOLLIDA, Jr., Respondent,**

**Rocking H. Ranch, Inc., a Missouri Corporation, Intervenor.**

Nos. 25749, 25921, 25926.

Missouri Court of Appeals, Southern District, Division One.

April 27, 2004.

Mary L.D. Griffith & C.H. Parsons, Jr., Parsons and Wilson, P.C., Dexter, for Appellant.

Christina L. Kime & L. Dwayne Hackworth, Hackworth, Kime & Hackworth, Piedmont, for Respondent.

Before BARNEY, P.J., GARRISON, J. and RAHMEYER, C.J.

PER CURIAM.

Michelle Marie Hollida ("Appellant") and Billy George Hollida, Jr., ("Respondent") were once husband and wife. In the judgment dissolving their marriage, the trial court ordered, in relevant part, that ten acres of land—determined by the trial court to be marital property and upon which the parties' home, a barn, and rop-

ing arenas were located—be sold at public auction to the highest bidder. The trial court also ordered the Sheriff of Wayne County ("sheriff") to handle the sale and ordered the cost of publication be divided equally between the parties.

The trial court further ordered that from the proceeds of the sale there "shall first be paid the mortgage owed to U.S. Bank Corp Mortgage,"[1] together with real estate taxes through 2002 and, thereafter, there "shall be paid all fees and expenses due" the sheriff, together with attorneys fees incurred by the sheriff.

Lastly, the trial court ordered that "[a]fter all sale expenses are paid from the net sale proceeds, [Respondent] shall receive 60 percent of the proceeds and [Appellant] shall receive 40 percent" and that "[a]ny deficiency in sale proceeds over expenses shall be born in like manner."

On May 2, 2003, pursuant to the judgment of the trial court, the sheriff struck off and sold the foregoing property at public auction to the sole bidder, Rocking H. Ranch, Inc. ("Intervenor"), for the sum of $50,000.00.[2] The record shows Appellant and her attorney were in attendance. Neither Appellant nor her attorney asked questions or made any bids during the auction.

On May 16, 2003, the trial court entered a subsequent judgment approving the Sheriff's Report of Sale ("report of sale"). The judgment ordered the sheriff to pay from the proceeds of the sale all publication costs; sheriff's fees; attorneys fees and recording fees, *prior* to disbursing the balance of the proceeds to U.S. Bank Home Mortgage "to be credited against

---

1. The mortgage amount approximated $117,000.00.

2. The record shows that Respondent's parents, Shirley Hollida and Billy G. Hollida, Sr., are the sole shareholders of Rocking H. Ranch, Inc., a Missouri corporation.

the outstanding mortgage owed on the real estate."

On May 28, 2003, Appellant filed a Motion to Set Aside Judgment and Order Approving Sheriff's Report of Sale of Real Estate and Sheriff's Deed, and to Set Aside the Sheriff's Deed ("Appellant's motion"). Appellant's motion maintained the report of sale was in error when it set out that the outstanding indebtedness owed against the real estate "exceeds the sale price, plus accrued interest on the mortgage owed to U.S. Bank Home Mortgage." Appellant's motion further asserted that the report of sale did not comply with the trial court's dissolution judgment; the published notice of sale; statements made to her and her attorney by the sheriff's attorney, Jon Kiser; and the sheriff's announcement at auction.[3]

Subsequent to a hearing on Appellant's motion, the trial court entered a judgment overruling and denying Appellant's motion, determining that the "Judgment and the Publication issued in accordance with same was clear and unequivocal and that the sale was appropriately handled by the Sheriff of Wayne County. Judgment final. Time is of the essence."[4] Appellant now brings her appeal from this second judgment, raising four points of trial court error, discussed below.

■■■■ " 'A motion to set aside a judicial sale is addressed to the sound discretion of the trial court.' "[5] *Robert R. Wisdom Oil Co. v. Gatewood*, 682 S.W.2d 882, 884 (Mo. App.1984) (quoting *Dougherty v. McKeever*, 502 S.W.2d 430, 431 (Mo.App.1973)). "The decisions of the trial court will not be set aside unless clearly erroneous." *Dougherty*, 502 S.W.2d at 431.

"In reviewing a court tried case, an appellate court must sustain the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law." *Bultemeier v. Ridgway*, 834 S.W.2d 896, 897 (Mo.App.1992); *see Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Issues such as credibility of witnesses, weight of evidence, and resolution of conflicts in testimony are for the trial court to resolve and are not matters that appellate courts can review." *Thomas v. Lloyd*, 17 S.W.3d 177, 187 (Mo.App. 2000). "A trial court is free to believe none, part, or all of a witness's testimony."

---

3. In particular, Appellant's motion complained that the report of sale failed to comport with his announcement made during the auction that the real estate was being sold subject to certain liens and debts. Appellant's motion maintained an ambiguity had arisen as to whether the outstanding mortgage and other debts were included in the bid price of $50,000.00 that the sheriff accepted at auction. Appellant's motion also set out that Appellant had been misled by sheriff's attorney, Jon Kiser, when, previous to the sale, he had informed Appellant and her attorney that "the buyer [at the sale] would buy the property subject to the lien[,]" and that "the buyer would pay the loan" and that she and Respondent "would split the proceeds 60/40."

4. The record reveals that U.S. Bank Corporation Mortgage had commenced a foreclosure proceeding against the property.

5. We distinguish between a judicial sale, also referred to as sheriff's sale in court opinions, and a sheriff's execution sale. In the latter sale, "[t]he sheriff sells by the naked authority of the writ, and he must conform to the law, else his sale will be irregular or void, according to the materiality of his departure from the requirements of the statute." *Noland v. Barrett*, 122 Mo. 181, 26 S.W. 692, 694 (1894). "If his sale is not void, the title passes at once by his deed, without the approval of the court." *Id.* "[W]hereas, if the sale is a technical *judicial* sale, as it is now understood,—that is to say, a sale under a decree or order of the court, and which must be reported to the court for its approval,—no title passes until it is approved." *Id.* (emphasis added).

*Id.* "A trial court may disbelieve testimony even when it is uncontradicted." *Id.*

 As best we discern Appellant's first point, she complains the trial court erred in approving the sheriff's report of sale because, unlike the terms for the sale as set out in the dissolution judgment—which provided that only costs of publication would be paid prior to applying the sale proceeds to the mortgage debt—the sheriff first applied the expenses associated with the sale, with the remainder to the mortgage debt.[6]

In support of her point Appellant cites to *Field v. Redfield,* 985 S.W.2d 912, 919 (Mo.App.1999), for the proposition that when a judgment of the trial court distributing marital property becomes final, it may not be modified in the same case.[7] She argues, then, that this re-allocation of expenses constituted an unauthorized modification of the trial court's dissolution judgment, which amounted to a substantial departure from the trial court's original dissolution judgment. We disagree.

 "While the court has the power to order a sale of real estate to accomplish the division of property, no statute or rule prescribes the procedure to be followed." *Swinford v. Swinford,* 682 S.W.2d 189, 191 (Mo.App.1984). "[I]t has been held that, even in the absence of statute, the court may make a just allowance for time, labor,

services, and expenses." 50A C.J.S. *Judicial Sales* § 13 (1997); *see Gloyd v. Gloyd,* 293 Mo. 163, 239 S.W. 73, 80 (1922).[8] "[T]o render a sale void or voidable the irregularity must be such as to affect the sale to the prejudice of the parties." *Koester v. Koester,* 543 S.W.2d 51, 54 (Mo.App.1976).

Here, we fail to see how Appellant may have been prejudiced by any variance between the trial court's order of sale per its dissolution judgment and its order confirming the report of sale, as related to the payment of the sheriff's expenses and attorney fees. Appellant acknowledged at the motion hearing that there would be expenses relating to the judicial sale such as insurance, publication, recording fees, and taxes. Additionally, there is little question that under the dissolution judgment she was obligated to pay half of the publication fees. Also, in its dissolution judgment the trial court specifically set out that "[a]fter all sale expenses are paid from the net sale proceeds, [Respondent] shall receive 60 percent of the proceeds and [Appellant] shall receive 40 percent" and directed that "[a]ny deficiency in sale proceeds over expenses shall be born in like manner."

In short, even if all of the sale proceeds were applied to the mortgage debt, under the terms of the original dissolution judgment Appellant was *still* obligated to pay

---

6. In the argument portion of her brief, without citation of authority, Appellant also argues that the dissolution judgment's sale terms were not proper where "the accepted bid price was for less than the amount owed against the property." This issue was not raised in Appellant's point relied on. "Issues raised only in the argument portion of the brief are not preserved for review." *Boatmen's Bank v. Foster,* 878 S.W.2d 506, 509 n. 4 (Mo.App.1994). Furthermore, Appellant has not supported this contention with relevant authority or argument beyond conclusions; consequently, the matter is considered abandoned. *Luft v. Schoenhoff,* 935 S.W.2d 685,

687 (Mo.App.1996); *see Baldwin v. Baldwin,* 109 S.W.3d 247, 250 (Mo.App.2003).

7. We note that *Redfield* did not involve a judicial sale, but rather, related to disposition of undivided property not disposed of in a decree of dissolution. *See id.*

8. *See, e.g.,* § 57.280.2, RSMo 2000 relating to fees authorized a sheriff for receiving and paying moneys on execution or other process, where lands or goods have been levied, advertised, and sold.

40 percent of the expenses of the judicial sale, as well as 50 percent of the publication costs. The insubstantial changing of the order of distribution by the trial court did not prejudice Appellant. *Id.* Point denied.

■ In her second point, Appellant asserts the trial court erred in approving the report of sale because the accepted bid was grossly insufficient; Respondent's father had "chilled" the sale; and there was no common understanding by the parties as to the terms of the sale. Accordingly, she requests this Court to set aside the trial court's prior approval of the report of sale.

Appellant argues that the accepted bid of $50,000.00 for the ten acres and its buildings with a mortgage debt of $117,000.00 is grossly inadequate to compensate Appellant for property with a fair market value of $250,000.00.[9]

■ We initially observe that "mere inadequacy of consideration will not justify the setting aside of a judicial sale unless accompanied by some irregularity." *Wisdom Oil,* 682 S.W.2d at 885. Additionally, "an adequacy analysis in Missouri requires a determination of what the property would bring in a fair sheriff's sale." *Yokley v. Wian,* 877 S.W.2d 179, 182 (Mo.App. 1994). " 'Market value may be considered in determining the adequacy of the sale price but *it is not the measure of adequacy.* The test of adequacy in a judicial sale is the price received in comparison with what the property would bring in a fair sheriff's sale.' " *Id.* (quoting *Koester,* 543 S.W.2d at 55).

A fair sheriff's sale price would be a price within a range of prices a neutral person would be willing to pay, at a forced sale, for property conveyed, not by warranty deed, but rather by a sheriff's deed, subject to known and unknown encumbrances, assessments, and potential liens; with an uncertain quality or condition of any existing structures; with potential latent problems and unknown liabilities; considering the amount a person would need to invest in necessary repairs or clean-up; with risk of legal process and expense to secure possession or clear title; and with uncertainty of potential concealed environmental hazards.

*Id.* at 183.

■ "In short, the price at a fair sheriff's sale would be a price in the range a neutral outsider, under no constraint to buy, would reasonably be willing to risk paying at a forced sale conducted by open bidding." *Id.* " 'Always to be considered is the underlying need for judicial sales to be final.' " *Id.* (quoting *Wisdom Oil,* 682 S.W.2d at 885). " 'A sale at some point must be final and should not easily be reopened for higher bid.' " *Wisdom Oil,* 682 S.W.2d at 885 (quoting *DiLeo v. Hunter,* 505 S.W.2d 112, 115 (Mo.App.1974)).

Here, the record shows that the ten acres in question were previously owned by Respondent's parents, Shirley Hollida and Billy G. Hollida, Sr., before they gave the property to Respondent and Appellant by their deed conveyance. Respondent's parents still owned the approximately 500 acres that completely surrounded the residence and ten acres sold at auction.

In an affidavit presented during the hearing, Mr. Hollida, Sr., set out that the residence located on the property was in need of "substantial repairs." He also set out there was an indoor roping arena on

9. In the original divorce proceedings, Appellant valued the ten acres and improvements at $250,000.00.

the property and that approximately 16 feet of the indoor roping arena encroached on his and his wife's property. Additionally, Mr. Hollida asserted that there was also an outdoor roping arena on the property that was approximately 200 feet by 150 feet, and that more than half of the outdoor roping arena "encroaches on our property." Mr. Hollida, Sr., both acknowledged and testified on cross-examination during the course of the post-sale hearing that the previously mentioned encroachments existed and that was the main reason he showed up and bid on the property at the sale.[10]

As previously mentioned, the encumbrance on the property amounted to the approximate sum of $117,000.00 and foreclosure proceedings had commenced prior to the sale. Indeed, the mortgagee had already commenced advertising of the foreclosure sale, and the foreclosure sale was set for a time after the judicial sale.

The record also reveals that Mr. Hollida, Sr., was the sole bidder, on behalf of Intervenor, bidding $50,000. As mentioned earlier, Appellant and her attorney were present. Neither Appellant nor her attorney made any bids or asked any questions during the auction proceedings.

Based on the foregoing, we cannot say that the trial court abused its discretion in confirming the report of sale, in so far as the adequacy of the price paid for the property at auction. This is particularly the case considering the fact that the purchaser at the sale took the property "sub-ject to all prior liens and encumbrances of record," which in this case was at least $117,000.00. *See Yokley,* 877 S.W.2d at 183; *Bultemeier,* 834 S.W.2d at 898. *See* discussion, *infra.*

■ The trial court was, no doubt, aware that absent fraud on the part of the sheriff, the rule of caveat emptor applies to a purchaser at a forced sale, *Yokley,* 877 S.W.2d at 183; *Bultemeier,* 834 S.W.2d at 897, and the trial court was no doubt cognizant that a prudent bidder would also adjust his bid according to potential risks associated with the acquisition of the property. "Property sold at a sheriff's sale will not normally sell for a price approaching its fair market value." *Yokley,* 877 S.W.2d at 183.

■ Appellant also argues that in "marking" the property by placing orange flags and orange markings on certain parts of the property to show the purported encroachments on Respondent's parents' property, Respondent and his father "chilled" the bidding on the real estate. Appellant maintains that on this basis alone, the trial court should have set the sale aside.[11]

It has been broadly stated that:

A sale may be set aside where a purchaser obtained the property for less than he otherwise would, by means of fraud, which prevented the attendance of bidders, or by means of artifice which deterred those in attendance from bid-

---

10. He also acknowledged that, prior to the sale, he and Respondent had placed certain markings "on the ground and on the buildings" to "show that I owned sixteen feet of [a] side shed" located on the property. He readily conceded the characterization by Appellant's attorney that the "property would be hard to sell at a public auction due to the encroachment. . . ."

11. Appellant's motion made no reference to the bid being "chilled" by the "markings" on the property to be sold. This matter was introduced during the course of the motion hearing without objection from Respondent's or Intervenor's counsel. *See* Rule 55.33(b); *RPM Plumbing Mech., Inc. v. Jim Plunkett, Inc.,* 46 S.W.3d 60, 63 (Mo.App.2001).

All rule references are to Missouri Court Rules (2003).

ding, or as the result of an appeal either to the sympathy or cupidity of the bidders.

*Boxwell v. Boxwell,* 444 S.W.2d 510, 512 (Mo.App.1969); *see also Vannoy v. Duvall Trust Co.,* 29 S.W.2d 692, 695 (Mo.1930); *Vette v. Hackman,* 292 Mo. 138, 237 S.W. 802, 805 (1922). "The evidence of the fraud, however, must be clear and unquestionable." 50A C.J.S. *Judicial Sales* § 23(d) (1997). Furthermore, a "sale will not be set aside because an interested party engaged in some act designed to chill the bidding if it appears that in fact no bidders were deterred from bidding." 47 AM.JUR.2D *Judicial Sales* § 146 (1969). "[I]t is immaterial that a purchaser prevented others from bidding if it does not also appear that the property was sold for less than its value." *Id.*

Here, Appellant acknowledged at the hearing that "we've got buildings that apparently sits [sic] on Bill Hollida's land...." More importantly, Appellant did not name or present the testimony of any person who attended the sale prepared to bid on the property, but did not do so due to the placement of the orange flags and paint on the property to be sold.

In *Boxwell,* the trial court was made aware that a potential bidder was deterred from attending the auction because of remarks made by the defendant. *Boxwell,* 444 S.W.2d at 511. Here, save for Appellant's conclusory remarks, there was little evidence from which the trial court could have concluded that the "markings" discouraged any person from bidding on the property.

Lastly, as previously set out, we cannot say that the price paid by the purchaser was inadequate, considering all of the circumstances relating to the property in question. 47 AM.JUR. 2d *Judicial Sales* § 146 (1969). Based on the foregoing, we cannot say that the trial court was clearly erroneous in refusing to set aside the report of sale on the basis of Appellant's claim that the sale had been chilled by the actions of Respondent and his father. *See Dougherty,* 502 S.W.2d at 431. The trial court did not abuse its discretion by this ruling.

■ Appellant additionally complains the trial court erred in approving the report of sale because there was "no common understanding by the parties as to the terms of the sale." It is our view that Appellant is essentially arguing she failed to understand the terms of the sale as set out in the dissolution judgment, and on this basis this Court should set aside the sale. However, she cites no authority supporting her claim that a judicial sale should be set aside when one of the parties does not understand the order of distribution of the sale proceeds as found in the original decree. As support for her contention, Appellant cites to *Wisdom Oil* for the general proposition that an execution sale may be set aside due to "some misunderstanding, mistake, misapprehension, or other fortuity." *Wisdom Oil,* however, does not assist Appellant because it is both factually and legally distinguishable.

The *Wisdom Oil* appellant contended he was prevented from being present at a sheriff's sale by "misunderstanding, mistake or other fortuity." *Wisdom Oil,* 682 S.W.2d at 885. In denying the *Wisdom Oil* appellant relief, this Court observed that "mere inadequacy of consideration will not justify the setting aside of a judicial sale unless accompanied by some irregularity." Id. This Court then set out various examples of irregularities, such as a mortgagor's mistakes as to the date of the sale; a misleading description of the property to be sold; the sale of an excessive portion of real property; a sale made after the sheriff announced sales were concluded; and a sale at an unusual hour. *Id.*

However, this Court also noted that the fact that an interested party does not attend a judicial sale does not, per se, establish a basis for relief, but rather, such a factor must be considered in relation to all of the circumstances. *Id.* In denying the *Wisdom Oil* appellant relief, this Court found that "appellant was not represented at the sale because its employee who was supposed to attend was out of town and didn't get back" and observed that an absence due to one's own negligence does not present a compelling reason for setting aside a judicial sale. *Id.*

Here, Appellant points to no irregularity as to the *manner* in which the sale was conducted. In fact, Appellant, a former real estate agent herself, prepared the advertisement for the sale. Also, Appellant and her able counsel were both present at the sale. There was no attempt to enjoin the sale, and neither she nor her attorney asked any questions during the course of the sale, and no complaint was made during the sale relating to the notice of sale and/or how the sale was conducted.

Saliently, Appellant offered no challenge to the *dissolution* trial court concerning any purported ambiguity in its order of sale. While Appellant testified in the motion hearing as to her confusion and misunderstanding of the bid amount, the motion trial court was free to disbelieve her testimony. *Thomas,* 17 S.W.3d at 187. The trial court was also free to believe the testimony of the sheriff's attorney, Jon Kiser, when he denied ever telling Appellant prior to the sale that "if the property did not bring as much as was owed on it that she would not be liable for the deficiency" as she contends. Point denied.

■ In her third point, Appellant maintains the trial court erred in *approving* the report of sale because the "judgment *ordering* the sale was defective, in that the decree failed to vest ownership in the property and lacked the required finding that a judicial sale was necessary; that the property could not be divided in kind; and that the sale was in the best interest of a party." (Emphasis added.)

Appellant is clearly attacking the *dissolution* judgment and its purported failure to find that: (a) the property cannot be divided in kind, and (b) it would be in the best interest of one or both of the parties to sell the property in question. *Galloway v. Galloway,* 122 S.W.3d 705, 707 (Mo.App. 2003); *Parker v. Parker,* 744 S.W.2d 469, 471 (Mo.App.1987); *Swinford,* 682 S.W.2d at 191.

■ While the legal propositions set out in the foregoing cases referenced by Appellant are sound, Appellant is not permitted to attack the dissolution judgment in this appeal. This is because in the absence of legally recognized after-trial motions, "[a] judgment becomes final ... at the expiration of thirty days following its entry." *Settles v. Settles,* 913 S.W.2d 101, 102 (Mo.App.1995); Rule 81.05(a)(1). "No such appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment or order appealed from becomes final." Rule 81.04(a). "A judgment of a court having jurisdiction cannot be impeached collaterally by showing the evidence on which it is based would have been insufficient on appeal to sustain the judgment." *Stark v. Thierjung,* 714 S.W.2d 830, 833 (Mo.App. 1986).

The dissolution judgment outlining the terms of the sale was entered February 14, 2003. We discern there were no recognizable after-trial motions filed relating to the dissolution judgment. Appellant filed her first notice of appeal on July 24, 2003, and then only from the docket entry denying her Motion to Set Aside Judgment and Order Approving Sheriff's Report of Sale

of Real Estate and Sheriff's Deed, and to Set Aside Sheriff's Deed, originally entered on July 15, 2003. Under these circumstances any appeal from the dissolution judgment would have been untimely.

The record also shows Appellant filed a second notice of appeal on November 7, 2003, identifying the judgment appealed from as the judgment entered November 4, 2003, which denied her Motion to Set Aside Sale. Then in a third notice of appeal, filed November 17, 2003, Appellant identified the judgment appealed from as the Order of May 16, 2003, which approved the Sheriff's Report of Sale of Real Estate Pursuant to Judicial Order.[12]

Even assuming, *arguendo*, our ability to review Appellant's contention of error, we note that in the dissolution judgment, the dissolution trial court specifically identified those items of marital property subject to its division and made no wholesale liquidation of the marital property by forced sale. Rather the dissolution trial court made specific provisions for the disposition of the proceeds of the sale of the property in question—after payment of all costs of publication, encumbrances, current real estate taxes, and fees and expenses of sale—on the basis of 40 percent to Appellant and 60 percent to Respondent. Additionally, the dissolution trial court set out in reasonable detail the procedures for the instant sale. Lastly, the remainder of the marital property of the dissolution parties was allocated to the respective parties. *Compare Swinford*, 682 S.W.2d 189, *with Parker*, 744 S.W.2d 469. Given the dissolution trial court's determination and directive we can discern no manifest injustice or miscarriage of justice occurred relative to the disposition of the parties' properties. Point denied.

■ In her fourth and last point on appeal, Appellant maintains the trial court erred in approving the report of sale because the "report of sale incorrectly applied the net sale proceeds to the mortgage debt, in that the buyer at the judicial sale bought the property subject to the encumbrances and Appellant was to receive 40 percent of the net proceeds per the terms of the decree." She argues that the rule of caveat emptor applies to sheriff's sales and that "a buyer at an execution sale takes subject to all prior liens and encumbrances."

Essentially, Appellant argues that because the purchaser bought the ten acres "subject to" the lien, this released her by operation of law from her personal obligation to pay the promissory note attendant to the mortgage in question. Appellant maintains, and it is undisputed by the parties, that a "purchaser who takes the property subject to a mortgage, must pay the mortgage debt if he wants to prevent the mortgage from foreclosing." See parallel discussion in *Yokley*, 877 S.W.2d at 183 ("A buyer at an execution sale takes subject to all prior liens and encumbrances of record").

However, Appellant incorrectly concludes from the foregoing proposition that this somehow obligates the purchaser at sale to *assume* the prior owners' liability on the promissory note. Significantly, Appellant cites no relevant authority in support of her contention. Appellant quotes 18 Mo. Prac. *Real Estate Law—Transactions* § 129 (2d ed.1998) in support of the general proposition that a purchaser who takes the property subject to a mortgage must pay the mortgage debt if the purchaser wants to prevent the mortgage from foreclosing. However, this particular authority *clearly sets out* that "in a 'subject to' deal the buyer has typically made

**12.** All three appeals have been consolidated by order of this Court.

no contracts obligating such a payoff." 18 Mo. Prac. *Real Estate Law—Transactions* § 129 (2d ed.1998). Additionally, "[t]he seller has no personal claim against the buyer for having failed to pay the mortgage since the buyer only took the property subject to the mortgage and did not *assume* it." *Id.* (emphasis added); *see McFarland v. Melson,* 323 Mo. 977, 20 S.W.2d 63, 66 (1929).

In *McFarland,* our supreme court noted that the "law is settled in Missouri and generally over the country that, when a grantee takes title to land by deed reciting the conveyance is *subject* to certain incumbrances, the deed itself imposes on him no personal liability with respect thereto." *Id.; see also Barnes v. Ganss,* 72 S.W.2d 884, 888 (Mo.App.1934) ("The West End Realty & Construction Company was not a party to the note, nor liable for the payment of it. It purchased the property subject to the deed of trust, but did not assume the payment of the note"). " 'By selling the mortgaged premises the mortgagor does not relieve himself from his personal or primary liability on the note or bond evidencing the mortgage debt....' " *State v. Newhart,* 539 S.W.2d 486, 491 (Mo.App.1976) (quoting 59 C.J.S. *Mortgages* § 393 (1949)). "The holder of the note ... secured by mortgage, may enforce this personal obligation irrespective of the security and without resort thereto." *Id.*

The foregoing cases have equal application to a judicial sale such as the instant sheriff's sale. Here, there is nothing in the record suggesting that Intervenor contractually assumed the promissory note prior to his purchasing the property in question at the forced sale. While the Intervenor-purchaser may ultimately have to pay the underlying debt to avoid foreclosure, if it fails to do so, as the facts are now presented, its liability is limited only to its interest in the property itself. *See McFarland,* 20 S.W.2d at 66–67; 18 Mo. Prac. *Real Estate Law—Transactions* § 129 (2d ed.1998). Point denied.

The judgment is affirmed.